**UNITED STATES of America, Plaintiff,**

v.

**John D. WARNER and Frances Warner, Defendants.**

**Cr. No. C2–84–51.**

United States District Court,
D. North Dakota,
Northeastern Division.

Sept. 27, 1984.

Rodney S. Webb, U.S. Atty., Fargo, N.D., for plaintiff.

David C. Thompson, Fargo, N.D., Amy M. Silberberg, Judd Golden, American Civil Liberties Union, Denver, Colo., for defendants.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

Defendants John and Frances Warner have moved to dismiss the indictment against them in the above-entitled case. Defendants have also filed a motion to compel discovery.

### I. MOTIONS TO DISMISS

The indictment charges Defendants with distribution and possession with intent to distribute peyote, a Schedule I, nonnarcotic controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Defendants, neither of whom are of American Indian blood, contend they are members of the Native American Church (NAC), and as such, they are exempt from prosecution, under 21 C.F.R. § 1307.31, for the acts charged in the indictment. The government contends Defendants are not members of the NAC, and thus, the exemption in 21 C.F.R. § 1307.31 does not apply.

The exemption in 21 C.F.R. § 1307.31 provides:

SECTION 1307.31. NATIVE AMERICAN CHURCH. The listing of peyote as a controlled substance in Schedule I does not apply to the nondrug use of peyote in bona fide religious ceremonies of the Native American Church, and members of the Native American Church so using peyote are exempt from registration. Any person who manufactures peyote for or distributes peyote to the Native American Church, however, is required to obtain registration annually and to comply with all other requirements of law.

21 C.F.R. § 1307.31.

Defendants contend the indictment must be dismissed because the government's prosecution of them violates the free exercise and establishment clauses of the first amendment and the due process and equal protection clauses of the fifth amendment.

### A. Free Exercise Claim

Defendants contend their possession and use of peyote in conjunction with bona fide religious ceremonies of the NAC is an activity protected under the free exercise clause of the first amendment. The freedom to act upon religious beliefs is not absolute in nature, but "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." *Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972). The state may justify an inroad on religious liberty by showing it is the least restrictive means of achieving some compelling state interest. *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1980).

The Sixth Circuit has established a two-step analysis for free exercise claims. *Sequoyah v. Tennessee Valley Authority*, 620 F.2d 1159, 1163 (6th Cir.1980), *cert. denied*, 449 U.S. 953, 101 S.Ct. 357, 66 L.Ed.2d 216. First, the court must determine whether the government action does in fact create a burden on the exercise of the defendants' religion. If a burden is found, it must be balanced against the gov-

598

ernmental interest, with the government being required to show an overriding or compelling reason for its action. *Sequoyah*, 620 F.2d at 1163, citing *Sherbert v. Verner*, 374 U.S. 398, 402–03, 83 S.Ct. 1790, 1792–93, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder*, 406 U.S. at 214–15, 92 S.Ct. at 1532–33.

In considering the first step of the analysis, the government concedes that the NAC is an established religion with a significant history of sacramental peyote use. In addition, the government concedes that the use of peyote is central to, and the cornerstone of, the religious practices of the NAC. Therefore, prosecution for the use of peyote in the bona fide religious practices of the NAC would create a burden on the free exercise of the religion of NAC members. The court notes, however, that there is an issue of fact in this case as to whether Defendants used peyote in bona fide religious ceremonies and whether they were members of the NAC.

Assuming for purposes of Defendants' free exercise claim that the present prosecution burdens the free exercise of Defendants' religion, the burden must be balanced against the governmental interest, with the government being required to show it has used the least restrictive means of achieving some compelling interest. 450 U.S. at 718. The conduct or actions in accord with religious convictions that have been regulated have invariably posed some substantial threat to public safety, peace, or order. *Sherbert*, 374 U.S. at 402–03, 83 S.Ct. at 1792–93.

The governmental interests served by the prosecution of the Warners under 21 U.S.C. § 841(a)(1) must be examined. The government asserts three specific "possible interests" served by controlling the use of peyote, which include: (1) the interest in preventing abuse of peyote by nonreligious persons who falsely claim to be religious; (2) the interest in preventing harm to the NAC member resulting from peyote use in religious ceremonies; and (3) the interest in encouraging compliance with the law by persons who do not claim an exemption based on religion, but who might doubt the public health justification if certain groups were exempted.

The legislative history leading up to the promulgation of 21 C.F.R. § 1307.31 does not support a finding that Congress was interested in a broad exemption for the religious use of peyote by non-NAC members or non-Indians. Officials of the Bureau of Narcotics and Dangerous Drugs (BNDD) informed Congress of the fact that the administrative exemption in effect at the time the Controlled Substances Act was passed applied only to the NAC and that they were about to deny an exemption to a non-Indian church. The BNDD distinguished the non-Indian church from the NAC because the unique history and tradition of the NAC was such that there was no question that the NAC regarded peyote as a diety. Hearings on H.R. 11701 and H.R. 13743 before the Subcomm. on Interstate and Foreign Commerce 117–18 (1970).

The legislative history of the Controlled Substances Act of 1970 discloses the general ultimate objective to deal in a comprehensive fashion with the growing menace of drug abuse in the United States. *See* H.R.Rep. No. 91–1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Admin. News 4566, 4567. Congress has strongly and clearly expressed its intent to protect the public from the obvious danger of drugs and drug traffic. See 21 U.S.C. § 801(2). Congress has determined that the illegal distribution, possession, and improper use of controlled substances has a substantial and detrimental effect on the health and general welfare of the American people. *Id.* Peyote is a Schedule I drug, and as such, Congress has found it has a high potential for abuse, it has no currently accepted medical use, and there is a lack of accepted safety for use of the drug under medical supervision. 21 U.S.C. § 841(a). Therefore, governmental interests in prohibiting the possession and distribution of peyote are of the highest order, in that peyote use poses a substantial threat to public health, safety, and welfare.

Courts have recognized that Congress has a compelling interest in controlling the use of drugs that it determines to be dangerous, such as peyote, and that Congress can constitutionally control the use of such drugs even if those drugs are to be used for religious purposes. *United States v. Middleton,* 690 F.2d 820, 825 (11th Cir. 1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983), citing *United States v. Hudson,* 431 F.2d 468, 469 (5th Cir.1970), *cert. denied,* 400 U.S. 1011, 91 S.Ct. 577, 27 L.Ed.2d 577 (1971) (the use of drugs as part of religious practice is not constitutionally privileged).

■ Even though the government has a compelling interest in controlling the use of peyote, it can be prohibited only if the restriction is the least restrictive means of achieving the government's purpose, or if the governmental interests cannot be otherwise served. This court holds that the compelling governmental interest is not otherwise served by allowing unlimited exemptions for the bona fide religious use of peyote. Furthermore, the regulatory exemption given the NAC is not required by the free exercise clause of the first amendment.

Based on the foregoing, the government's interest in prohibiting the use of peyote is compelling and overrides Defendants' first amendment rights to the free exercise of religion.

### B. Establishment Clause Claim

Defendants contend the determination by the United States that they may not take advantage of the exemption in 21 C.F.R. § 1307.31 constitutes governmental preference of some members of the NAC over other members, in violation of the establishment clause of the first amendment. By placing the constructive condition upon 21 C.F.R. § 1307.31 to the effect that members of the NAC need to be of American Indian blood to come within its purview, Defendants contend the United States is impermissibly interjecting itself into internal matters of a religious group, favoring some NAC members and disadvantaging others by subjecting them to criminal prosecution. The government contends that its basis for instituting the present prosecution is that neither John nor Frances Warner is an American Indian and neither John nor Frances Warner is a member of the NAC.

■ Under the establishment clause government aid or preference to religion passes constitutional muster only if it satisfies each part of a three-prong test, which includes: (1) the governmental preference must have a secular purpose; (2) its primary effect must be one that neither advances nor inhibits religion; and (3) its application must not result in excessive entanglement of government with religion. *Stone v. Graham,* 449 U.S. 39, 40, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980) (per curiam).

■ For the framers of the Constitution, the "establishment" of a religion connoted sponsorship, financial support, and active involvement of the sovereign in religious activity. *Walz v. Tax Commission,* 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970). Neither governmentally established religion nor governmental interference with religion will be tolerated. *Id.* at 669, 90 S.Ct. at 1411. There is room, however, for "play in the joints productive of a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." *Id.* The court in *Walz* further stated, "The limits of permissible state accommodation to religion are by no means co-extensive with the non-interference mandated by the Free Exercise Clause." *Id.* at 673, 90 S.Ct. at 1473. Therefore, the government enjoys a permissible zone of accommodation to religion.

■ In applying the three-prong test, the exemption allowed for members of the NAC in 21 C.F.R. § 1307.31 does not have a religious purpose. The purpose of the regulation was not to further the interests of the NAC or any other religion, but to meet possible free exercise claims by removing affirmative barriers to religious practices. Nor does the exemption in effect sponsor the religion of the NAC; it

merely allows the free exercise of the traditional NAC religion. There is no sponsorship, financial support, or active involvement of the sovereign in religious activity here, as contemplated by the framers of the Constitution. Finally, there is no excessive governmental entanglement with the religious affairs of the NAC by the government's prosecution of Defendants, given the government's reliance on the history of the American Indians' religious beliefs and use of peyote in religious ceremonies and the governmental duty to preserve the Indian culture and religion. Therefore, the establishment clause is not violated by the exemption given to the NAC and the prosecution of Defendants for distribution and possession with intent to distribute peyote.

**C. Equal Protection Claim**

Defendants contend the determination by the United States that they are not within the class of persons within the scope of 21 C.F.R. § 1307.31 denies them equal protection as guaranteed by the fifth amendment. Defendants contend they have been prosecuted on the basis that neither of them is of American Indian blood. Defendants contend this is a classification based on race, and as such, is suspect and constitutionally defective under the equal protection clause, because there is no compelling governmental interest to justify the classification.

The government contends they are prosecuting Defendants because they are not members of the NAC within the meaning of 21 C.F.R. § 1307.31. The government points to the bylaws of the Native American Church of North America, which require members to be at least one-quarter Native American blood. The government further contends Defendants must prove to the trier of fact that they are members of the NAC and are entitled to the exemption under 21 C.F.R. § 1307.31.

The preference given to Indian "members" of the NAC is not racial in nature but political in nature. *Peyote Way Church of God, Inc. v. Smith*, 556 F.Supp.

632, 638 (N.D.Tex.1983). Congress has a power or duty to the Indians to preserve their dependent nations as a cohesive culture until such time as they become so assimilated in the mainstream of American culture so as not to be "a people apart." *Id.* at 639. In the American Indian Religious Freedom Act, 42 U.S.C. § 1996, Congress has recognized this duty. *Id.* The government furthers this policy with the exemption for the use of peyote in the rituals of the NAC. *Id.*

The Supreme Court has recognized that the plenary power of Congress to deal with the special problems of Indians is drawn both explicitly and implicitly from the Constitution. *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). Indians have a unique legal status under federal law and the plenary power of Congress, based on a history of treaties and the assumption of a "guardian-ward" status. *Id.* at 551–52, 94 S.Ct. at 2483–84. Literally every piece of legislation dealing with Indian tribes and reservations single out for special treatment a constituency of tribal Indians living on or near reservations. If these laws, derived from historical relationships and explicitly designed to help only Indians were deemed invidious racial discrimination, the entire Title 25 of the United States Code would be effectively erased, and the solemn commitment of the United States toward the Indians would be jeopardized. *Id.* at 552, 94 S.Ct. at 2483. Based on the foregoing, the Supreme Court has held that preferences given to Indians do not constitute *racial* preferences or discrimination. *Id.*

In *Morton v. Mancari* the Court held that employment preference for qualified Indians in the Bureau of Indian Affairs did not constitute invidious racial discrimination in violation of the due process clause of the fifth amendment, but was "reasonable and rationally designed to further Indian self-government." 417 U.S. 535, 551–55, 94 S.Ct. 2474, 2483–85. The Court stated:

On numerous occasions this Court specifically has upheld legislation that sin-

601

gles out Indians for particular and special treatment. (Citations omitted.) As long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed. Here, where the preference is reasonable and rationally designed to further Indian self-government, we cannot say that Congress' classification violates due process.

*Id.* at 554–55, 94 S.Ct. at 2484–85.

Applying the same rational basis test to the Warners' equal protection claim, it is clear from legislative history that religion is an integral part of the Indian culture and use of peyote is necessary to the survival of Indian religion. *Peyote Way,* 556 F.Supp. at 637, citing 1978 U.S. Code Cong. & Ad. News 1262 (the legislative history of the American Religious Freedom Act, 42 U.S.C. § 1996). The United States is following the policy of preserving the Indians' dependent nation and culture by granting an exemption to Indians for the use of peyote in the religious ceremonies of the NAC. *See* 556 F.Supp. at 639. Therefore, the preference given to Indians in the application of 21 C.F.R. § 1307.31 is tied rationally to the fulfillment of the government's unique obligation toward the Indians and does not violate Defendants' rights to equal protection.

### D.  Due Process Claims

Defendants contend the failure of the United States to apply the exemption in 21 C.F.R. § 1307.31 to them violates their due process rights under the fifth amendment. Defendants' due process claims are based on substantive due process and the void-for-vagueness doctrine.

■ The court's ruling on Defendants' substantive due process claim does not differ from the ruling on the equal protection claim, because the test to be applied is the same. The exemption would only violate substantive due process if it created an arbitrary classification that could not be tied rationally to the fulfillment of the government's unique obligation toward the Indians. *See Morton v. Mancari,* 417 U.S.

at 554–55, 94 S.Ct. at 2484–85; *Kennedy v. Bureau of Narcotics and Dangerous Drugs,* 459 F.2d 415 (9th Cir.1972), *cert. denied,* 409 U.S. 1115, 93 S.Ct. 901, 34 L.Ed.2d 699 (1973), *reh'g denied,* 410 U.S. 959, 93 S.Ct. 1414, 35 L.Ed.2d 694. As discussed above, the preference given to Indians in the application of 21 C.F.R. § 1307.31 is tied rationally to this obligation. Therefore, Defendants' substantive due process claim fails.

■ Defendants' other due process argument is based on the established principle that a penal statute must define a criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Defendants contend the government's constructive condition that one must be of American Indian blood to be exempted under 21 C.F.R. § 1307.31, despite the clarity of the language of the regulation that members of the NAC are exempt from prosecution, violates their due process right to be given notice of prohibited conduct.

During oral argument the government alleged Defendants knew the NAC was an Indian Church and they were warned that legal peyote use was for Indians only. In addition, the government contends the jury must decide whether Defendants were members of the NAC and whether they were using peyote in bona fide religious ceremonies of the NAC.

Defendants cite an Arizona case that recognized the NAC as "primarily an 'Indian religion' by reason of its origins and in the context that substantially all of its members are American Indians." *State v. Whittingham,* 19 Ariz.App. 27, 504 P.2d 950, 951 (1973), *cert. denied,* 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 667. The court noted, however, that membership to non-Indians is usually not refused. *Id.* at 951. The government has filed the by-laws of the Native American Church of North

America, which require members to have at least one-quarter Native American blood. Even though the NAC may not be a centralized religion, ordinary people would be on notice that an exemption to the NAC may only be an exemption for Indians, given the origin of the NAC and the fact that substantially all of its members are American Indians.

The language of the exemption is not so indefinite as to encourage arbitrary and discriminatory enforcement. The government is merely prosecuting individuals who they contend are not members of the NAC. This decision to prosecute non-Indians is not arbitrary and discriminatory, in light of the special governmental obligation to preserve the Indians' religion and culture. Therefore, Defendants' void-for-vagueness claim must also fail.

## II. DISCOVERY MOTION

At the hearing on September 21, 1984, in this matter, Defendants' attorney stated that he was satisfied with the materials received from the United States Attorney, with the exception that Defendants have not received taped conversations between Jim Eagle and agents of the North Dakota Drug Enforcement Unit (N.D. DEU). The United States contends the N.D. DEU is not party to this prosecution. Defendants contend the N.D. DEU agents were acting as agents of the United States and the United States has control of this information. Since there has been no showing of need, Defendants will not be allowed to discover the tapes involving the N.D. DEU agents at this time. The United States must only provide Defendant with exculpatory material regarding Defendants that is in the United States' file and statements of government witnesses after the government witnesses testify at trial. The government need not provide Defendants with a list of government witnesses, absent a showing of particularized need. The remainder of Defendants' requests in the motion for discovery are apparently moot, in light of the government's open file in this case.

**IT IS ORDERED** Defendants' motions to dismiss the indictment on the basis of the free exercise clause, the establishment clause, the equal protection clause, and the due process clause are denied.

**IT IS FURTHER ORDERED** Defendants' motion for compelled discovery is denied in part and moot in part.