**PEYOTE WAY CHURCH OF GOD, INC., Plaintiff,**

v.

**Edwin MEESE III, Attorney General of the United States, Jim Mattox, Attorney General of the State of Texas, Defendants.**

No. CA–3–82–0778–T.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 31, 1988.

---

**20.** *Donovan v. Mazzola,* 716 F.2d 1226 (9th Cir. 1983).

Raymond E. White, Mary L. O'Connor, Cooperating Attys., American Civil Liberties Union, Dallas Chapter, Dallas, Tex., for plaintiff.

John T. Bannon, Jr., U.S. Dept. of Justice, Washington, D.C., Paula Mastropieri–Billingsley, Asst. U.S. Atty., Dallas, Tex., for defendant Edwin Meese III, Atty. Gen. of the U.S.

Charles A. Palmer, Asst. Atty. Gen., Douglas M. Becker, Gray & Becker, Austin, Tex., for defendant Jim Mattox, Atty. Gen. for the State of Tex.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MALONEY, District Judge.

This case was originally before Judge William M. Taylor, Jr., who granted sum- mary judgment in favor of Defendants, upholding the constitutionality of both state and federal statutes which prohibit the use of peyote as a controlled substance, and make an exemption for the nondrug, religious use of peyote by members of the Native American Church. On appeal to the United States Court of Appeals for the Fifth Circuit, the case was remanded and assigned to this Court for a determination of whether the statutes making possession or distribution of peyote a criminal act de- nied to members of the Peyote Way Church of God the right to freely exercise their religion under the First Amendment. *Pey- ote Way Church of God v. William F. Smith, et al.*, 742 F.2d 193 (5th Cir.1984). This case was tried before the Court on June 16, 1987, and concluded on October 1, 1987. Counsel for the parties were direct- ed to submit post-trial briefs on or before October 23, 1987. The Court, having con- sidered the testimony of all witnesses, the exhibits, briefing and arguments of coun- sel, makes the following findings of fact and conclusions of law.

### Findings of Fact

The Court finds that it has jurisdiction over the parties and the subject matter of this lawsuit under 28 U.S.C. § 1331.

1. Plaintiff Peyote Way Church of God, Inc. ("Peyote Way") was incorporated in 1979 in Arizona.[1] The principals of Peyote Way are Immanuel P. Trujillo ("Trujillo"), Ann Zapf ("Zapf") and Matthew Kent ("Kent"). Zapf and Trujillo have each served as Peyote Way's president, and Kent is a minister for Peyote Way. At the time of the trial of this cause, Trujillo, Zapf, and Kent were the only resident members of Peyote Way.[2]

2. Peyote Way seeks declaratory and injunctive relief on the following grounds:

---

1. Plaintiff's Exhibit 1.

2. The Fifth Circuit in *Peyote Way Church of God, Inc. v. William F. Smith, et al.*, 742 F.2d 193 (5th Cir.1984) states:
   The Church [Peyote Way] professes what it describes as a Christian peyotist religion, bas- ing its theology on the Bible, the Book of Mormon, the doctrine and covenants of the Church of Jesus Christ of the Latter–Day Saints, and its own bylaws and points of or- der. Members of the Church ingest peyote as a sacrament and worship it as the embodi- ment of God, hence a deity. The single place of worship is located on a ranch in the south- ern Arizona desert.

a. that 21 U.S.C. §§ 841 and 844[3], as applied to Peyote Way members, violate the free exercise clause of the First Amendment;

b. that 21 C.F.R. § 1307.31[4] violates the equal protection clause of the Fifth Amendment and the establishment clause of the First Amendment, and that this section violates Peyote Way members' constitutional right to privacy;

c. that Tex.Rev.Civ.Stat.Ann. art. 4476–15, §§ 4.032, 4.042, and 4.053[5] are unconstitutional as applied to the Church under 42 U.S.C. § 1983, the First and Fourteenth Amendments to the United States Constitution, and Article I, § 6 of the Texas Constitution; and,

d. that Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.11(a)[6] is unconstitutional as applied to Peyote Way under 42 U.S.C. §§ 1981 and 1983, the First and Fourteenth Amendments to the United States Constitution, and Article I, § 3 of the Texas Constitution.

3. Peyote Way has approximately 150 non-resident members.

> Today the Church has five resident and about 150 non-resident members, of whom only about 50 are active.
>
> The Church contends that it strives to maintain strict controls over the possession and distribution of peyote. It states that it keeps records of peyote receipts and distributions; limits the number of people who have control over its peyote supply; imposes stringent membership requirements (including a 48–hour fast period and actual presence at the Church); records memberships in the local county clerk's office; and requires sincerity of belief for the receipt of peyote. The Church has also expressed willingness to cooperate with federal and state agencies in the control of peyote, to conform to any regulations restricting the use of peyote to religious ceremonies, and to maintain such records of its possession and use as the two governments may require.
> At 195–196.

3. These sections detail prohibited acts and punishment regarding controlled substances.

4. 21 C.F.R. § 1307.31 (1987) states:
> The listing of peyote as a controlled substance in Schedule I [21 U.S.C. § 812(b)] does not apply to the nondrug use of peyote in bona

4. Trujillo, Kent, and Zapf use peyote as a sacrament, and consider it to be a deity. These three resident members use peyote in connection with their religion, and sincerely believe that the use of peyote for other than religious purposes is sacrilegious.

5. Trujillo was once a member of the Native American Church, who later left to become one of the founders of Peyote Way.

6. Peyote Way subscribes to many tenets similar to those of the Native American Church.

7. The Native American Church, under both the Texas and federal statutory schemes, enjoys an exemption for the non-drug, religious use of peyote from the laws which prohibit the possession and distribution of peyote.

8. Peyote may be sold legally in Texas only by authorized dealers who are licensed by the Texas Department of Public Safety ("DPS"). DPS records reflect that all of the current supply of peyote is necessary to supply the needs of the Native American Church.

> fide religious ceremonies of the Native American Church, and members of the Native American Church so using peyote are exempt from registration. Any person who manufactures peyote for or distributes peyote to the Native American Church, however, is required to obtain registration annually and to comply with all other requirements of law.

5. These sections concern the unlawful manufacture or delivery of controlled substances in Penalty Group 3 or 4; the unlawful possession of controlled substances in Penalty Group 3; and the delivery of controlled substances to minors.

6. Section 4.11(a) states:
> The provisions of this Act relating to the possession and distribution of peyote shall not apply to the use of peyote by members of the Native American Church in bona fide religious ceremonies of the church. However, persons who supply the substance to the church are required to register and maintain appropriate records of receipts and disbursements in accordance with rules promulgated by the director. The exemption granted to members of the Native American Church under this section does not apply to a member with less than 25 percent Indian blood.

## Conclusions of Law

Peyote Way urges the Court to find that it should be allowed to enjoy the same exemption as that afforded the Native American Church for the religious use of peyote. Peyote Way contends that to find otherwise would deprive its members of their rights to free exercise of religion.

The Court is directed by *United States v. Rush*, 738 F.2d 497, at 513 (1st Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985), where the First Circuit held:

> The peyote exemption is uniquely supported by the legislative history and congressional findings underlying the American Indian Religious Freedom Act, which declares a federal policy of 'protect[ing] and preserv[ing] for American Indians their inherent right of freedom to believe, express and exercise the[ir] traditional religions ..., including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.' 42 U.S.C. § 1996.

Congress saw fit, in its enactment of the Controlled Substances Act of 1970 to list peyote as a controlled substance, possession and distribution of which is unlawful.[7] The exemption provided for nondrug, religious ceremonial use for the Native American Church is not included in the statute, but is the subject of a regulation, included in the Code of Federal Regulations. 21 C.F.R. § 1307.31.

The Court must determine whether Plaintiff's challenge of the federal and state statutes regarding possession and distribution of peyote survive the government's assertion that there is an overriding purpose for the proscription of peyote use, and that a free exercise of religious beliefs challenge is not enough to circumvent the exercise of legislative power to regulate behavior which may be harmful to individuals or the public at large.

There are many cases which hold that the constitutional protection afforded freedom of religious belief does not extend absolutely to religious conduct. *United States v. Rush*, 738 F.2d 497 (1st Cir.1984); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

In *United States v. Rush*, the First Circuit held that when a law is challenged as interfering with religious conduct, the constitutional inquiry must be based on three questions:

1. whether the challenged law interferes with free exercise of a religion;

2. whether the challenged law is essential to accomplish an overriding governmental objective; and

3. whether accommodating the religious practice would unduly interfere with fulfillment of the governmental interest.[8]

The Court finds the record to reflect that the first question may be affirmatively answered. That is, the resident members of Peyote Way are sincere in their beliefs and in their desire to practice a form of peyotism. They view the use of peyote as an integral part of their religious doctrine and practice of their faith. They believe that

---

**7.** The Fifth Circuit defined peyote in *Peyote Way Church of God, Inc. v. William F. Smith, et al.*, 742 F.2d 193 (5th Cir.1984):

> Peyote is a small spineless cactus that grows along the Rio Grande River. Its stems have jointed tubercles or 'buttons' that, when ingested, have a hallucinogenic effect.
>
> The major active ingredient in peyote is mescaline. Mescaline is a hallucinogen whose effects are similar to those of lysergic acid diethylamide ("LSD"). It may produce alteration of consciousness, evidenced by confused mental states and dreamlike revivals of past traumatic events, alteration of sensory perception, evidenced by visual illusions and distortion of space and perspective, alteration of mood, evidenced by anxiety, euphoria, or ecstasy, alteration of ideation, evidenced by impairment of concentration and intelligence, and alteration of personality, evidenced by impairment of conscious and the breakdown of cultural and social inhibitions. [Citing 35 Fed.Reg., 14,791 (1970)]. Peyote may cause such severe adverse reactions as psychosis and suicide. The potential adverse effects of peyote are minimized, however, when it is used in a controlled setting, the subject is prepared for its use, and the subject expects sensations of calmness and euphoria.

At 195, 197.

**8.** Citing *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982).

without the use of peyote, their religion would not have meaning.[9]

The Court further finds that the second inquiry may also be answered affirmatively. That is, the Controlled Substances Act of 1970 and the Texas statutes prohibiting the possession and distribution of peyote are essential to accomplish the governmental purpose of regulating the use of substances found to be harmful to the public at large. These statutes were enacted by Congress and the Texas legislature in an effort to regulate those items deemed to pose a threat to individual health and social welfare.

The Court further finds that the third inquiry may also be answered affirmatively. That is, accommodating Peyote Way's religious practices would unduly interfere with the fulfillment of the federal and state governments' overriding concern for the protection of the public welfare. The parties are not in dispute that peyote is a psychotropic drug. Such drugs have long been the subject of legislative action. Both federal and state legislative bodies have concluded that it is in the interest of the public to control and regulate such drugs. This Court cannot invade the legislative province to so act. This Court's inquiry must be limited to determining whether the legislative acts prohibiting the possession and distribution of peyote are constitutional as applied to Peyote Way.

### The Native American Church Exemption

The Controlled Substances Act, 21 U.S.C. § 812, was enacted in 1970. The exemption for the religious use of peyote by the Native American Church was created by regulation. 21 C.F.R. § 1307.31. When the Act was presented for amendment, there was discussion held on whether any amendment would affect the exemption

held by the Native American Church.[10] Congress, in amending the Act, did not see fit to alter the exemption in any way.

The Court finds that the exemption for the religious use of peyote by the Native American Church found in 21 C.F.R. § 1307.31 is in effect a grandfather clause.[11] The Court finds that Congress had before it all information necessary to make the initial determination to "grandfather" the religious use of peyote by the Native American Church as an exemption to the Controlled Substances Act. In subsequent sessions which considered amendment of the Controlled Substances Act, Congress saw fit to leave the exemption as written, without qualification as to whether churches, other than the Native American Church, which regard the use of peyote as integral to their religious practice are to be afforded the same exemption.

There is no doubt in the Court's mind that Congress intended to exempt the nondrug use of peyote to the Native American Church, and that conclusion was reached on the basis that the Native American Church was in existence long before Congress determined that the regulation of psychotropic drugs was necessary to protect the general welfare. *People v. Woody*, 61 Cal.2d 716, 40 Cal.Rptr. 69, 394 P.2d 813 (1964); *Kennedy v. Bureau of Narcotics and Dangerous Drugs*, 459 F.2d 415 (9th Cir.1972), *cert. denied*, 409 U.S. 1115, 93 S.Ct. 901, 34 L.Ed.2d 699 (1973); *Native American Church of New York v. U.S.*, 468 F.Supp. 1247 (S.D.N.Y.1979), aff'd. 633 F.2d 205 (2d Cir.1980).

Congress has had ample opportunity to amend the Controlled Substances Act and the regulation which provides the exemption for the Native American Church. The Court finds that the clear intent of Congress was to exempt the nondrug religious use of peyote by members of the Native

---

9. Testimony of Trujillo and Kent.

10. *Peyote Way Church of God, Inc. v. William F. Smith, et al.*, 742 F.2d 193 (5th Cir.1984), at n. 15.

11. A grandfather clause is defined by *Black's Law Dictionary* as:

A provision in a new law or regulation exempting those already in or a part of the existing system which is being regulated. An exception to a restriction that allows all those already doing something to continue doing it even if they would be stopped by the new restriction.

American Church, not to exempt the use of peyote by other religious groups, no matter how sincere these other religious groups are in their beliefs.

The Court recognizes that *People v. Woody* and *Native American Church of New York v. U.S.* both held that the religious use of peyote is guaranteed by the First Amendment. *People v. Woody* involved a group affiliated with the Native American Church, and the exemption in 21 C.F.R. § 1307.31 was therefore held applicable to them.[12]

In *Native American Church of New York v. U.S.*, the Native American Church of New York was not affiliated with the Native American Church of North America. Native American Church of New York petitioned the Drug Enforcement Administration ("DEA") to rewrite the exempting regulation to include the Native American Church of New York and other churches which use psychedelics as central to the existence of their churches. DEA denied the petition. The District Court of the Southern District of New York found that the exemption for peyote use is equally available to the Native American Church of New York if in fact it is a bona fide religious organization and would make use of peyote for sacramental purposes and regard the drug as a deity. At 1251.

The district court in *Native American Church of New York v. U.S.* pointed to the Congressional hearings on the amendment of the Controlled Substances Act. The court quoted from the remarks made by Congressman Satterfield and Bureau of Narcotics and Dangerous Drugs representative Sonnenreich. Sonnenreich stated, "We consider the Native American Church to be *sui generis*. The history and tradition of the church is such that there is no question but that they regard peyote as a deity as it were, and we will continue the

exemption." *Native American Church of New York v. U.S.*, at 1251. The district court found that this language should be interpreted to mean, "plainly the Church was *sui generis* because it was the only religious organization then in existence that regarded peyote as a deity. Mr. Sonnenreich's statement did not foreclose the exemption to other religious organizations later established that also regard peyote as a deity, as the plaintiff, the Native American Church of New York, claims to do." *Native American Church of New York v. U.S.*, at 1251. The district court's findings were affirmed by the United States Court of Appeals for the Second Circuit, without a published opinion. 633 F.2d 205 (2d Cir. 1980).

This Court does not agree with this interpretation of this portion of the legislative history. This Court finds that the interpretation of the Native American Church's being *sui generis* should be viewed as a statement that the Native American Church "is of its own kind or class, that is, the only one of its own kind." [13]

The Court is further directed by the findings made in *United States v. Warner*, 595 F.Supp. 595 (D.N.D.1984), where the district court in North Dakota found:

> The legislative history leading up to the promulgation of 21 C.F.R. § 1307.31 does not support a finding that Congress was interested in a broad exemption for the religious use of peyote by non–NAC [Native American Church] members or non-Indians. Officials of the Bureau of Narcotics and Dangerous Drugs (BNDD) [now the Drug Enforcement Administration] informed Congress of the fact that the administrative exemption in effect at the time the Controlled Substances Act was passed applied only to the NAC and that they were about to deny an exemption to a non-Indian church. The BNDD

**12.** In *People v. Woody,* the defendants were Navajo Indian peyotists who had been convicted of violating a California statute prohibiting the unauthorized possession of peyote. California stipulated at trial that at the time of their arrest the defendants were engaged in a religious ritual which involved the use of peyote. Relying on the centuries-long history of Peyotism among the Indian tribes of North America, the California Supreme Court reversed the convictions on the ground that the California statute, as applied to the defendants, constituted a violation of the free exercise clause of the First Amendment.

**13.** *Black's Law Dictionary* (1979).

distinguished the non-Indian church from the NAC because the unique history and tradition of the NAC was such that there was no question that the NAC regarded peyote as a deity. [Citations omitted].

The legislative history of the Controlled Substances Act of 1970 discloses the general ultimate objective to deal in a comprehensive fashion with the growing menace of drug abuse in the United States. [Citations omitted]. Congress has strongly and clearly expressed its intent to protect the public from the obvious danger of drugs and drug traffic. See 21 U.S.C. § 801(2). Congress has determined that the illegal distribution, possession, and improper use of controlled substances has a substantial and detrimental effect on the health and general welfare of the American people.

Even though the government has a compelling interest in controlling the use of peyote, it can be prohibited only if the restriction is the least restrictive means of achieving the government's purpose, or if the governmental interests cannot be otherwise served. This court holds that the compelling governmental interest is not otherwise served by allowing unlimited exemptions for the bona fide religious use of peyote.

*United States v. Warner*, at 598–599.

This Court further finds that the exemption afforded the Native American Church has been in effect since 1965. 79 Stat. 226 § 3(a). The 1965 Drug Abuse Control Amendments were superseded in 1970 when Congress passed a comprehensive revision of the narcotics laws, the Controlled Substances Act of 1970. 21 U.S.C. § 801, et seq. The regulation promulgated by DEA (formerly Bureau of Narcotics and Dangerous Drugs) should be given special weight since the regulation was enacted close in time with the statute, and since the regulation has been unchanged during a statutory rewriting and reenactment. See *National Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979).[14]

This Court further finds that the subsequent enactment of the American Indian Religious Freedom Act in 1978 further supports the conclusion that the Controlled Substances Act sought to exempt only the nondrug religious use of peyote by members of the Native American Church. The Act reads in part:

On or before August 11, 1978, it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian.

■ The Court is guided by *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974) where the Supreme Court held that "subsequent legislation declaring the intent of an earlier statute is entitled to significant weight." At 275, 94 S.Ct. at 1762. The Court therefore concludes that the exemption, in existence more than ten years before the enactment of the American Indian Religious Freedom Act, is supported by the policy and Congressional intent underlying the Act. See *United States v. Rush*, 738 F.2d 497 (1st Cir.1984); *Indian Inmates of Nebraska Penitentiary v. Grammer*, 649 F.Supp. 1374 (D.C.Neb.1986). The Court therefore

---

**14.** In *National Muffler Dealers Ass'n. v. United States*, the Supreme Court held:

A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of legislative intent. Other relevant considerations are the length of time the regulation has been in effect, the reliance placed on it, the consistency of the [agency's] interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute.

At 477, 99 S.Ct. at 1307.

See also *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), where the Supreme Court held:

In addition to the importance of legislative history, a court may accord great weight to the longstanding interpretation placed on a statute by an agency charged with its administration. This is especially so where Congress has re-enacted the statute without pertinent change. In these circumstances, congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.

At 275, 94 S.Ct. at 1762.

concludes that regardless of the sincerity of Peyote Way's members' beliefs in peyotism, the exemption provided the Native American Church cannot be expanded to include non-Native American Church use of peyote.

The Court further concludes that the overriding interest of Congress to control the use of narcotics and psychotropic drugs outweighs the interest of expanding an exemption that clearly was meant to be a grandfather clause, and not a full-scale exemption of religious peyote use.

Finding that Congress' intent to exempt the Native American Church is not meant to extend to other churches which use peyote, the Court finds that Peyote Way's claims for violation of the free exercise clause and establishment clause of the First Amendment must fail. *United States v. Warner*, 595 F.Supp. 595 (D.N.D. 1984); *United States v. Rush*, 738 F.2d 497 (1st Cir.1984); *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

■ The Court further finds that Peyote Way's right to privacy argument must also fail. It is well settled that the right to privacy extends to place "limitations on the State's powers to substantially regulate conduct" pertaining to "marriage, procreation, contraception, family relationships, and child rearing and education." *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed. 2d 405 (1976). The Court finds that there is no constitutional right to use a controlled substance. See *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986).

The Court therefore finds for the federal defendant on the constitutional challenges made to the Controlled Substances Act and the exemption provided for the Native American Church.

### Challenges to the Texas Statutes

■ Peyote Way has challenged the constitutionality of Tex.Rev.Civ.Stat.Ann. art. 4476-15, §§ 4.032, 4.042, 4.053 and 4.11(a) as applied to Peyote Way. These statutes prohibit the possession and distribution of controlled substances, including peyote, and provide an exemption to the Native American Church. Peyote Way makes the same constitutional arguments regarding these state statutes as it does regarding the federal Controlled Substances Act and the exemption of the Native American Church's religious use of peyote.

The Court finds, using the same analysis as used in examining the federal law, that the Texas statute has been enacted for the purpose of promoting the public safety, peace, and order. The overriding interest of the State of Texas in controlling the abuse of narcotics and psychotropic substances outweighs the interest of Peyote Way in exercising its religious beliefs. See *United States v. Merkt*, 794 F.2d 950 (5th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987).

■ The Court further finds that the state exemption allowing possession of peyote by members of the Native American Church does not violate the Equal Protection clause. The state exemption is the same as the federal exemption. Under the Supremacy Clause of the Constitution, the State of Texas could not enact a law which would conflict with federal law. The federal exemption is a political classification, not a racial one, and therefore does not violate the Equal Protection clause. *United States v. Warner*, 595 F.Supp. 595 (D.N.D. 1984).

The Court therefore concludes that Peyote Way's claims regarding the Texas statutes must also fail in light of the constitutional analysis made in this order regarding the federal statute and exemption.

### JUDGMENT

This action came on for trial before the Court, Honorable Robert B. Maloney, District Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

It is ORDERED and ADJUDGED that Plaintiff Peyote Way Church of God, Inc. take nothing, and that the action against Defendants Edwin Meese III, Attorney General of the United States and Jim Mat-

tox, Attorney General of the State of Texas be dismissed on the merits.