UNITED STATES of America,

v.

Jarvis Darnell JEFFERSON n/k/a Rohi Israel, Defendant.

No. 1:95–CR–25.

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 12, 2001.

Thomas N. O'Malley, Arata Law Firm, Quinton L. Ellis, Rohi Israel, Fort Wayne, IN, for Jarvis Darnell Jefferson.

Tina L. Nommay, United States Attorneys Office, Fort Wayne, IN, for U.S.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court for ruling on the Government's Petition to Revoke Supervised Release of Defendant Jarvis Darnell Jefferson, n/k/a Rohi Israel ("Israel"), filed on August 16, 2001. On October 25, 2001, the court held an evidentiary hearing on the Petition, ordered post-hearing briefing and took the matter under advisement. The court, having now considered the evidence at the hearing and the post-hearing briefs submitted by the parties, will GRANT the Government's Petition.

### FACTUAL BACKGROUND

Israel has been on supervised release since February 15, 2001, following completion of his seventy (70) month term of imprisonment imposed for possessing a firearm as a convicted felon. While incarcerated, Israel received substance abuse treatment and continued this treatment while he was completing his term of imprisonment at the Allen County Work Release facility. Israel completed the substance abuse treatment program on March 12, 2001.

As part of his supervised release, Israel was placed on a random urinalysis program through the United States Probation Office. One of the conditions of his supervised release requires Israel to "refrain from excessive use of alcohol, and [he] shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance ... except as prescribed by a physician." (Supervised Release Condition # 7). Since being placed on supervised release, Israel tested positive for marijuana usage on eleven different occasions. Laboratory test results confirmed Israel's marijuana usage and those same

results indicate, in the probation officer's opinion, "very serious abusive usage." (Tr. pp. 18–19). Thus, the Government seeks to revoke Israel's term of supervised release and incarcerate Israel for seven months with no term of supervised release thereafter.

Israel admits that he smokes marijuana, in his words "all day every day," and that his use of marijuana violates his conditions of supervised release. Israel claims, however, that his use of marijuana is "for meditation purposes only" and to "give praise to God" as part of the Rastafarian religion (Revocation Hearing Tr. pp. 43–44, hereafter, "Tr. p. ___"). Thus, Israel invokes the Religious Freedom Restoration Act ("RFRA") as a legal defense to the Government's petition claiming that the Government, through the condition of supervised release, is substantially burdening the exercise of his religion by prohibiting him from smoking marijuana.

At the evidentiary hearing, the parties stipulated the following facts:

(1) Rastafarianism is among the religious groups sufficiently stable and distinctive to be identified as one of the existing religions in the United States and is thus a recognized religion within the meaning of the First Amendment to the United States Constitution and the Religious Freedom Restoration Act.

(2) Rastafarianism emphasizes the use of marijuana in ceremonies designed to bring the believer closer to the divinity and to enhance unity among believers. Functionally, marijuana operates as a sacrament with the power to raise the partakers above the mundane and to enhance their spiritual unity.

In addition to these facts, Israel testified that he converted to Rastafarianism in 1996 and that in doing so he made a vow to God that requires him to abstain from liquor, eating meat, and requires him to live righteously. As part of this vow, Israel wears dreadlocks and smokes marijuana regularly, customs traditionally associated with the Rastafarian religion. Government's Exh. 13. Israel does not attend a "church" nor does he study the Bible in a group setting because "Rastafar right is everywhere." (Tr. p. 49). Although he does not practice Rastafarianism in the presence of others, Israel testified that other Rastafarians "smoke more than [he does] because they are able to grow it." (Tr. p. 45). Israel does not grow his own marijuana but stated that he buys marijuana "every day all day" (Tr. p. 52) and that he purchases marijuana on the street "everywhere." (Tr. p. 51).

Israel testified that he "can't go and get no job me smoking herbs and all that . . ." (Tr. p. 52). When asked about how he is able to earn money to purchase marijuana, Israel said, "I might not work according to your all system . . . I might have my own detail shop, I might go work for somebody or something . . ." (Tr. p. 52). Israel has one child and has child support obligations that he is not meeting because he is not working "according to our system."

### DISCUSSION

 "It is a familiar doctrine that the free exercise clause 'embraces two concepts,—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.'" *Olsen v. DEA*, 878 F.2d 1458, 1460–63 (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940)). In 1993, Congress passed the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb, et seq., in direct response to the United States Supreme Court's decision, *Employment Div. Dept. of Human*

*Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Smith,* a case involving the ceremonial use of peyote, the Court had said that neutral laws of general applicability that incidentally conflict with religious practice would not be subject to strict judicial scrutiny. *Id.* at 1603. RFRA was designed to require the courts to apply a strict scrutiny test to any law that "substantially burdened" a person's practice of religion.[1] Thus, under the RFRA, a law which substantially burdens religious freedom is impermissible unless the law serves a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb–1(a) and (b).

To establish his RFRA defense to revocation of his supervised release, Israel has the burden of demonstrating that the governmental action is a(1) substantial burden, (2) on a religious belief, (3) which belief is sincerely held. *Kikumura v. Hurley,* 242 F.3d 950, 960 (10th Cir.2001); see also *United States v. Valrey,* 2000 WL 692647 (W.D.Wa. February 22, 2000). The parties have stipulated the second element and thus, Israel need only establish that prohibiting him from smoking marijuana creates a substantial burden on his sincerely held religious belief. *Id.* If Israel establishes these remaining two threshold elements, the burden shifts to the government to demonstrate that the challenged action furthers a compelling government interest in the least restrictive manner. *Kikumura,* 242 F.3d at 962; *United States v. Meyers,* 95 F.3d 1475 (10th Cir.1996).

The court begins by noting that Israel appeared under the influence of marijuana at the hearing, consistent with his testimony that he smokes marijuana all day every day. During the hearing, counsel for Israel had to instruct him to "stay focused with me today" and the court had to instruct Israel that if he "listen[ed] to the questions and answer[ed] the question[s], this [hearing] will go a lot quicker" (Tr. p. 47). Thus, there is little doubt from Israel's demeanor that he was high on marijuana at the time of this hearing.

This notwithstanding, a review of Israel's testimony indicates that he sincerely believes in the Rastafarian religion as he understands it. Much was made by the Government about the fact that Israel does not go to a formal church or attend a Biblical study group and thus, in its opinion, Israel simply reads books and interprets it as scripture to suit his own needs. However, the Rastafarian religion is not the type of religion that has a distinct formal organizational structure:

> Rastafari has never been a homogeneous movement. No formal organization unites all elements of the movement; no leadership hierarchy exercises control; and no established creed prescribes and ensures orthodoxy.
>
> Many researchers regard the lack of formal organizational links in Rastafari as a very positive characteristic of the movement. It allows the various Rasta groups and camps to enjoy a kind of freedom not always encouraged in many organized religious and secular movements. Each group defines its own ethos within the broader Rastafarian culture..

Murrell, Nathaniel Samuel, *Chanting Down Babylon, A Rastafarian Reader,* Temple University Press, 1998, 349. Israel described the history and basic tenets of his religion and these are clearly

---

1. RFRA was invalidated as applied to state and local regulations by the Supreme Court's decision in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

Because the restriction at issue is a federal one, *Flores* does not preclude the court from considering Israel's RFRA defense.

consistent with what is contained in the government's exhibits and the court's independent research. Thus, the court is convinced that Israel is a sincere believer and follower of the Rastafarian religion.

The more interesting question is whether the Rastafarian religion mandates that Israel smoke marijuana "all day every day" as he suggests. The record is absolutely clear that Israel smokes marijuana "all day every day," he told the undersigned as much on at least three occasions during the hearing. The evidence, as stipulated by the parties, indicates that the Rastafarian religion that Israel professes alliance to does emphasize the use of marijuana in religious meditation and ceremonies for the purpose of bringing adherents closer to the divinity. Indeed,

> ... [C]ertain rituals serve to shape and perpetuate Rastafarian religion and sociality. These rituals fall under the general rubric of what Rastas call 'grounding.' ... An important reality that all Rastas share is their commitment to "ital livity." Ital means 'springing from the earth, earthy, natural,' or organic. Livity is living according to the strict principles of Rastafari. Ital livity is therefore a commitment to using things in their natural or organic states ...

> Central to the idea of ital living is the belief in herbal healing ... Foremost among the herbs that Rastas treasure is ganja (marijuana), which they often refer to as the 'holy herb' or 'wisdom weed.' Ganja is used in a variety of ways: it is brewed as tea, soaked in rum for medicinal purposes, smoked ritually and socially, and used as seasoning in a variety of dishes ... [T]he Rastas, more than any other group, have elevated the plant to a central place in their personal and religious life. Among the Rastas, ganja is highly valued for its physical, psychological and social therapeutic powers. In accordance with their belief in herbal healing, Rastas regard the use of ganja as a source of physical healing. They contend that their use of ganja, particularly its ritual smoking, ensures perpetual health ...

> Psychologically, ganja smoking is a source of illumination that gives one access to 'inner and worldly knowledge.' ... Ganja smoking is also a means of creating and celebrating communality.

Murrell, pp. 354–355. Thus, it is clear that a central tenet of the Rastafarian religion is smoking "natural herbs" or marijuana.

As for the frequency with which his religion requires him to partake of marijuana, the record is devoid of any evidence on this point. In its brief, the Government contends that smoking all day every day is abusive but cites to no authority or evidence to support such a contention. However, the court's research shows that Rastas often engage in "grounding" rituals where "a few Rastas gather to smoke ganja spliffs or to 'draw the chalice' and to reflect on their faith or on any current historical event that impinges on their lives." *Id.* Grounding for many Rastas is a daily activity and some Rastas hold "periodic all-night gatherings." *Id.* Some attend an all-night gathering in addition to their daily rituals. In all of these gatherings, "ganja is smoked as a sacrament and is believed to be the source of social and spiritual healing and insights." (Murrell, p. 355).

Israel stated that he did not smoke marijuana in the presence of other Rastas but that he meditated on a daily basis as part of his religion. As noted, the Government offered nothing to show that daily meditation (with marijuana usage) is not part of Israel's religion and the above information cited by the court indicates that it may be possible that Israel's religion permits or teaches daily marijuana usage.

As a practical matter, the Court is in agreement with the Government that

smoking marijuana at religious rituals all day, every day appears abusive. However, even if the court held that smoking marijuana "all day every day" was excessive, it would still have to determine what an "acceptable level" of usage would be as part of Israel's religion since it is clear that a main doctrine of the religion involves smoking marijuana—this much was conceded by the Government. This court has no evidentiary basis with which to make such a determination and any guesswork on the court's part would result in an administrative quagmire for the Probation Office. Thus, for purposes of the court's analysis, it will assume that Israel's usage is consistent with his religious practice.

■ Having assumed the existence of the above element of the RFRA defense, the court must next determine whether the Government's restriction on Israel's marijuana usage is a substantial burden on the free exercise of religion, within the meaning of the RFRA. A substantial burden "is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Mack v. O'Leary,* 80 F.3d 1175, 1179 (7th Cir.1996); *See also Valrey,* 2000 WL 692647 at *1. In order to show a free exercise violation under this "substantial burden" test, Israel is required to prove that being unable to smoke marijuana prevents him from engaging in conduct or having a religious experience that his faith mandates. "This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Graham v. Commissioner,* 822 F.2d 844, 850–51 (9th Cir.1987).

■ The Government takes the position that the condition of supervised release does not impose a "substantial burden" on

Israel's religion because Israel was prohibited from smoking marijuana while incarcerated and thus, he is facing no additional burden now. The problem with this argument is that the Government fails to recognize that the burden on Israel's religion was a substantial one while he was incarcerated. In the context of prison regulations, however, legitimate penological concerns relating to such things as safety are a compelling government interest which would permit the government to substantially burden Israel's religious practices while he was incarcerated. *See Fawaad v. Jones,* 81 F.3d 1084 (11th Cir.1996) (holding that maintaining security in a prison constitutes a compelling governmental interest and that the control of contraband into and out of the prison is a fundamental part of maintaining prison security); see also *United States v. Valrey,* 2000 WL 692647 at *3 (summarily dismissing the Government's argument that Valrey should not be permitted to use marijuana on supervised release because he could not do so in prison).

■ Here, this court believes the record clearly supports a conclusion that the supervised release condition substantially burdens Israel's religion. The Government has conceded that the use of marijuana is a sacrament in the religion and the authorities cited by the court clearly support the conclusion that marijuana use is a central tenet of *ital livity,* a key principle in the Rastafarian religion. Thus, the court concludes that Israel has demonstrated that the supervised release condition substantially burdens his practice of a central concept in his religion.

■ At this point the burden shifts to the Government to show that the challenged action furthers a compelling state interest in the least restrictive manner. *Kikumura,* 242 F.3d at 962. The Government gives three reasons why it has a

"compelling interest" in regulating Israel's marijuana consumption: (1) the government has a health and safety interest in prohibiting Israel's use of marijuana; (2) the government has a compelling interest in uniformly enforcing drug laws; (3) the government has a compelling interest in rehabilitating Israel and making him a productive member of society. Because the court finds the first and second arguments dispositive of the compelling government interest prong, it shall only address those contentions.

■ At the hearing the Government requested that the court take judicial notice of certain statutory provisions namely, 21 U.S.C. § 801(2), 21 U.S.C. § 812(b)(1)(a)–(c); 21 U.S.C. § 811; 21 U.S.C. § 844(a); and 21 U.S.C. § 841. Title 21, section 801 sets forth the Congressional findings and declarations relating to the Controlled Substances Act ("the Act"). Specifically, § 801(2) is a Congressional finding stating that "[t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people." The Government also points out that marijuana is a Schedule I controlled substance under the Act and has been classified as such because of the rationale provided in 21 U.S.C. § 812(b)(1)(a)–(c), that is, that the drug has a high potential for abuse, has no currently accepted medical use, and there is a lack of safety for use of the drug. Finally, the Government notes that 21 U.S.C. § 841 and § 844 prohibit the possession of marijuana in addition to the manufacturing, distribution, and dispensing controlled substances. Thus, the Government's position is that there is a compelling government interest in enforcing all the drug laws in a uniform manner and in regulating the distribution of illegal drugs to protect the health and safety of United States citizens.

Having reviewed the Government's arguments, the court finds that it has adequately proven the existence of a compelling government interest sufficient to justify the substantial burden on Israel's freedom of religious expression. As the Government has identified, Congress has clearly set forth the hazards and public health and safety concerns associated with drug possession, use, manufacturing, and distribution in this country. Indeed, Congress has recognized that drug use has a substantial affect on the health and well-being of its citizens and, by virtue of classifying marijuana, the drug at issue here, as a Schedule I controlled substance, Congress has made clear its belief that marijuana is just as harmful to the public health and safety as other illegal drugs listed as Schedule I controlled substances. Thus, the uniform enforcement of the drug laws to prevent the harm to the public health and safety envisioned by Congress is clearly a compelling government interest.

In addition, the court concludes that there is a compelling government interest in the uniform application of conditions of supervised release to all defendants. Congress established the Sentencing Commission and the Sentencing Guidelines to "provide certainty and fairness in meeting the purposes of sentencing . . ." and to treat defendants who were similarly situated with similar sentences. 28 U.S.C. § 991. As part of this goal of fairness, Congress mandated that certain conditions of supervised release *shall* apply to all federal defendants who have been sentenced to a term of supervised release. *See* 18 U.S.C. § 3583(d) (mandatory language). Routine drug screening is included as part of those mandatory conditions and thus, it is clear that the goal of enforcing supervised release conditions uniformly to ensure fundamental fairness where

personal liberty is at risk is a significant government interest.

■ Finally, a review of the legislative history surrounding Congress' enactment of the RFRA indicates that Congress did not intend RFRA to provide an automatic defense to drug laws. *See H.R.Rep.* 103–88 ("In terms of the specific issue addressed in *Smith,* this bill would not mandate that all states permit the ceremonial use of peyote, but it would subject any such prohibition to the aforesaid balancing test."). Rather, in enacting RFRA, Congress expressly stated that it "expects that the courts will look to free exercise cases decided prior to *Smith* for guidance in determining whether the exercise of religion has been substantially burdened and the least restrictive means have been employed in furthering a compelling governmental interest." S.Rep. 103–111; H.R.Rep. 103–88.

Looking at pre-*Smith* cases addressing the issue presented here, the government's compelling interest in upholding the drug laws and protecting the public health and safety laws is more than evident. Indeed, the governmental interest in prohibiting the possession and distribution of a Schedule I substance is "of the highest order," because use of these substances "poses a substantial threat to public health, safety and welfare." *United States v. Warner,* 595 F.Supp. 595, 598 (D.N.D.1984) (discussing peyote); *Olsen,* 878 F.2d at 1460–63 (use of marijuana as sacrament by Ethiopian Zion Church may be regulated because of Government's compelling interest in regulation of marijuana); *United States v. Middleton,* 690 F.2d 820, 823 (11th Cir. 1982) (compelling interest in regulating and controlling use of marijuana justifies burden on Ethiopian Zion Church); *United States v. Rush,* 738 F.2d 497, 513 (1st Cir.1984) (accommodation of religious freedom is practically impossible as applied to marijuana laws). In *Rush,* a pre-*Smith* case, the First Circuit noted that "[e]very federal court that has considered the matter ... has accepted the congressional determination that marijuana in fact poses a real threat to individual health and social welfare, and has upheld the criminal sanctions for possession and distribution of marijuana even where such sanctions infringe on the free exercise of religion." *Rush,* 738 F.2d at 513 (citing cases). After making that finding, the Court "decline[d] to second-guess the unanimous precedent establishing an overriding governmental interest in regulating marijuana." *Id.*

In light of this pre-*Smith* precedent, which Congress intended the court to use as a guideline, as well as Congress' specific findings that illegal drug use, distribution, etc., has an adverse impact on the health, safety, and welfare of the public, this court concludes that there exists a compelling government interest in ensuring the safety and well-being of its citizens sufficient to justify burdening Israel's practice of the Rastafarian religion. Thus, the Government has met its burden of establishing a compelling government interest in regulating Israel's marijuana use.

■ Further, as applied to Israel, this compelling interest is implicated by his use of marijuana "all day every day." While it is clear that Israel is not manufacturing or distributing marijuana to third parties or even to other Rastafarians, Israel *is* acquiring marijuana through third parties. Israel stated that his use of marijuana requires him to engage others in illegal activity, which in turn, perpetuates illegal drug distribution. This activity, in turn, affects the government's compelling health and public safety interest on a broader level than just Israel's personal consumption of otherwise illegal substances. *See* 21 U.S.C. § 801(2) (indicating that drug distribution significantly and detrimentally

affects the public health and safety).[2] Thus, Israel's activity does have an impact on the compelling government interest established by the Government.

██ The Court also finds that the condition of supervised release is the least restrictive means of accomplishing the objective of enforcing the drug laws and protecting the health and public safety of citizens. Any judicial attempt to carve out a religious exception will result in significant administrative problems for the probation office and open the door to a myriad of claims for religious exceptions. See *United States v. Oliver*, 255 F.3d 588, 589 (8th Cir.2001) (rejecting argument under RFRA that one-man judicial exception to criminal statute should be made, under the premise that there are no safeguards to prevent similarly situated individuals from asserting the same privilege and leading to uncontrolled enforcement of statute). Accordingly, the Government has demonstrated both a compelling government interest that is accomplished by the least restrictive means available.

This said, the Court finds from the evidence presented at the hearing that Israel tested positive for marijuana on the following dates: April 9, 2001, April 17, 2001, April 23, 2001, April 26, 2001, May 1, 2001, May 7, 2001, July 6, 2001, July 17, 2001, July 27, 2001, and July 31, 2001. The Court further finds based upon the above that the Defendant has violated Condition of Supervised Release # 7 which states that he is "to refrain from excessive use of alcohol, and [he] shall not purchase, pos-

sess, use, distribute, or administer any narcotic or other controlled substance . . . except as prescribed by a physician." Accordingly, the Government's petition to Revoke the Defendant's Supervised Release will be GRANTED.

### CONCLUSION

Based on the foregoing, the Government's Petition to Revoke the Defendant's Supervised Release is GRANTED. By separate minute entry this matter will be set for sentencing.

---

2. The court also notes that the Government has additional grounds to revoke Israel's term of supervised release that were not presented to the court in the Government's revocation petition and to which Israel would not have a RFRA defense. Israel does not work and he is unable to maintain employment because of his marijuana smoking. His failure to maintain employment violates condition of supervised release # 5 which states that he "shall

work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons." In addition, Israel is not paying child support that he presently owes to support his child. Standard condition of supervised release # 4 requires Israel to "support his or her dependents and meet other family responsibilities." Thus, he is likewise in violation of this condition.