377 So.2d 648 (1979)
Jacquelyn Renee TOWN, Petitioner,
v.
STATE of Florida ex rel. Janet RENO, As State Attorney of the Eleventh Judicial Circuit of Florida, in and for Dade County, Florida, and City of Miami Beach, a Florida Municipal Corporation, Respondents.
No. 55987.
Supreme Court of Florida.
November 1, 1979.
Rehearing Denied January 8, 1980.
*649 Milton M. Ferrell, Jr., Arthur C. Massey, Jr. and Richard R. Booth, of Ferrell & Ferrell, Miami, for petitioner.
Arthur Joel Berger and Bayar W. Heath, Asst. State's Attys., Miami, and Robert L. Shevin, City Atty., and Beth Ellen Spiegel, Asst. City Atty., Miami Beach, for respondents.
OVERTON, Justice.
This cause is before us on a petition for writ of certiorari to review a temporary injunction granted by the circuit court of Dade County enjoining the use of cannabis on residential property owned by Jacquelyn Renee Town and enjoining the use of said property as a church for the Ethiopian Zion Coptic Church. In entering this injunction, the trial court directly and initially construed the first amendment of the United States Constitution. We have jurisdiction to review this interlocutory order by writ of certiorari. Art. V, § 3(b)(3), Fla. Const.
For the reasons subsequently expressed in this opinion, we affirm the action of the trial judge.
The parties agree and the trial court expressly found that: (1) the Ethiopian Zion Coptic Church represents a religion within the first amendment to the Constitution of the United States; (2) the "use of cannabis is an essential portion of the religious practice"; (3) petitioner is the owner of a residence located at 43 Star Island, Miami Beach, which she received as a gift from an elder of the church; (4) petitioner's residence was frequented daily by members of the church and others who congregated to worship; (5) under the beliefs of the church, cannabis, a controlled substance, is frequently and freely used; (6) cannabis is not itself an object of worship; (7) prayer is directed solely to a spiritual god; (8) members of the church believe that cannabis is the mystical body and blood of "Jes-us"; and (9) through cannabis members purportedly find a spirit of love, unity, and justice, which brings them closer to their god.
The findings further reflect that the use of cannabis is not restricted to members of the church. Instead, it is freely given to children and adults, members and nonmembers. Checks on distribution of cannabis to nonbelievers in the faith are minimal, and no efforts are made to ascertain whether visiting nonmembers are truly interested in learning more about the faith. Nonmembers are not required to undergo any religious training prior to being permitted to share in the use of cannabis. The record and findings also establish that cannabis is continually smoked throughout the waking hours, independent of prayer services or religious rituals. Members partake of cannabis anywhere, not just within the confines of a church facility. Further, the Ethiopian Zion Coptic Church is not a new church or religion but the record reflects it is centuries old and has regularly used cannabis as its sacrament. The trial court balanced the state's interests in protecting the public health, welfare, safety, and morals against the petitioner's interests in the free exercise of her religion and found injunctive relief proper. The trial court also found that petitioner's property was used as a church in violation of the zoning ordinances of the City of Miami Beach. For *650 this reason, the court enjoined further use of petitioner's property as a church but permitted Ms. Town to worship in her home with family and friends.

I. The Use of Cannabis as a Religious Practice.

The first amendment precludes the enactment of laws which prohibit the free exercise of religion. Laws may never restrict religious belief; however, religious practices may be subject to governmental regulation in limited instances. E.g., Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). To justify the regulation of a particular religious practice, the state must demonstrate a compelling interest. Id.; McDaniel v. Paty, 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978); Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).
The record substantiated the trial court's findings that the church was a religion within the first amendment, that petitioner sincerely subscribed to the beliefs of the church, and that the use of cannabis was an integral part of the religion. The issue before this Court is whether the State of Florida has a compelling interest in restricting the use of cannabis as a religious practice.
It is well established that the state may restrict religious practices which pose a serious threat to the health of the citizenry. Thus, the Supreme Court of the United States long ago held that one might be compelled to be vaccinated against a disease despite religious objection. Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905). Other courts have upheld the state's right to protect children by requiring emergency medical treatment over a parent's religious objection. E.g., In re Sampson, 29 N.Y.2d 900, 328 N.Y.S.2d 686, 278 N.E.2d 918 (1972); Jehovah's Witnesses v. King County Hospital, 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1968). Restriction on the handling of poisonous snakes and drinking poison as a religious practice has also been upheld. State ex rel. Swann v. Pack, 527 S.W.2d 99 (Tenn. 1975), cert. denied, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976).
In Hamilton v. State, 366 So.2d 8 (Fla. 1978), this Court reexamined the classification of cannabis as a controlled substance and upheld the statutory scheme regulating its use, reasoning:
There continues to be authority supporting the position that the health hazards of cannabis justify its proscription and its present classification. Although there is substantial expert opinion to the contrary, the fact that there continues to be expert opinion supporting the reasons which prompted the Legislature to enact this statute is sufficient to constitute a continuing rational basis for the act.
Id. at 10. Petitioner contends that the legislative enactment of section 402.36, Florida Statutes (1978 Supp.), which allows cannabis to be used in medical research as the effect of making the classification of cannabis as a Schedule I drug under section 893.03, Florida Statutes (1978 Supp.), irrational and in effect requires this Court to recede from its Hamilton decision. We disagree. In classifying cannabis as a Schedule I drug, the legislature expressly stated that cannabis "has a high potential for abuse and has no currently accepted medical use in treatment in the United States, and in its use under medical supervision does not meet accepted safety standards." § 893.03(1), Fla. Stat. (1978 Supp.) (emphasis added).
By enacting section 402.36, the legislature was permitting the drug to be used for research only under strictly controlled circumstances in order to determine how, if at all, it could properly be used in medical treatment. This act in no way makes the legislative classification of cannabis arbitrary or unreasonable. We reaffirm our decision in Hamilton. Although Hamilton is not dispositive of the instant case, it does establish for the State of Florida that cannabis remains a dangerous drug. This fact was also established independently in the instant case through the testimony of expert witnesses. This evidence, coupled with the indiscriminate use of the drug by Ms. *651 Town and the followers of the church, convinces us that the state has sustained its burden. The testimony of an eleven-year-old boy exemplifies our concern. This boy testified that he went to petitioner's residence three times within two months after hearing that cannabis was smoked there. The boy, who had previously smoked cannabis, was admitted with a friend after telling a guard that they had come to pray. Each time he visited he was given a "spliff," a combination of cannabis and tobacco. He did not have to pray during his visits though members sometimes talked to him about god. This easy access to cannabis for a child who had absolutely no interest in learning the religion, coupled with the indiscriminate use of the drug by members of the church, clearly warrants intervention by the state.
Petitioner cites People v. Woody, 61 Cal.2d 716, 40 Cal. Rptr. 69, 394 P.2d 813 (1964), in which the California Supreme Court held that the state could not constitutionally proscribe the use of peyote by Navajo Indians as a part of their religion. This case is not controlling and is distinguishable. The California court found the use of peyote by an ancient Indian religious group in the desert outweighed the state's interest in proscribing use of the drug. Accord State v. Whittingham, 19 Ariz. App. 27, 504 P.2d 950 (Ct.App. 1973), cert. denied, 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 667 (1974); Whitehorn v. State, 561 P.2d 539 (Okl.Ct.Crim.App. 1977). In Woody the use of peyote was restricted to adults, and it was used only during a particular ceremony. In the instant case the use of cannabis by members and nonmembers of the church continues throughout the day and is wholly unrestricted. The record further reflects that children and nonmembers are not only permitted to use cannabis but also are encouraged to do so by adult members.
Woody is also distinguishable in that the court expressly found that the peyote users posed no threat to the general public while under that drug's influence. Peyote was used during a ceremony, conducted in the desert, which continued from sundown Saturday to sunrise Sunday. At sunrise breakfast was served, and then the members departed. By morning the effects of the peyote had disappeared with no aftereffects. In the instant case the record contains testimony of neighbors stating that participants under the influence of cannabis were constantly coming and going. An officer who often observed the activities at petitioner's residence testified that he would usually see fifteen to twenty cars parked on the premises. This evidence coupled with evidence of the use of cannabis at all times of the day leads to the inescapable conclusion that participants traveling from petitioner's residence in fact posed a threat to public safety and welfare.
Although we find the Woody decision distinguishable from the instant case, we recognize, as the California court did, that: "[T]he right to free religious expression embodies a precious heritage of our history. In a mass society, which presses at every point toward conformity, the protection of a self expression, however unique, of the individual and the group becomes ever more important." 61 Cal.2d at 727, 40 Cal. Rptr. at 77, 394 P.2d at 821. In the instant case, however, we find that the state's compelling interest outweighs the free exercise interests of the petitioner. To hold otherwise would, for all practical purposes, legalize the use of cannabis for anyone, member or nonmember of the Ethiopian Zion Coptic Church, who came to petitioner's residence to use the prohibited drug.

II. Violation of City Zoning Ordinances.

The second facet of the temporary injunction prohibits Ms. Town from using her residence as a church in violation of Miami Beach zoning ordinances. We concur with the trial court's finding that the residence was indeed serving as a center of operations for the Ethiopian Zion Coptic Church. At least three times a day members of the church would gather in the main building to pray. Prayer meetings would consist of chanting and singing and would sometimes last for several hours. Testimony of several neighbors revealed that approximately thirty people participated in *652 the regular prayer sessions. Ms. Town did not contest, either in her written brief or at oral argument, the trial court's finding that the church was in violation of the city's zoning. Rather, she argued that (1) the zoning ordinances must yield to the first amendment, and (2) the trial court's injunctive order was unconstitutionally vague. She contends that enforcement of this order will necessitate impermissible governmental entanglement. See, e.g., Lemmon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).
We reject both arguments. The petitioner never sought a zoning exception and did not question the general authority of the city to zone this property. Further, the land was so zoned prior to its purchase for church purposes. The authority of a city or county to reasonably regulate the location of churches has previously been approved by this Court. See Pyland v. Orange County, 328 So.2d 199 (Fla. 1976); United Lutheran Church of the Epiphany v. City of Miami Beach, 82 So.2d 880 (Fla. 1955). Under the circumstances set forth in this record, we believe the temporary injunction prohibiting the use of the property identified as 43 Star Island as a church was entirely reasonable and proper and was not unconstitutionally vague.
The order of the trial court is affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, SUNDBERG and ALDERMAN, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice, concurring in part, and dissenting in part.
I concur with the majority opinion to the extent that it does not conflict with People v. Woody, 61 Cal.2d 716, 40 Cal. Rptr. 69, 394 P.2d 813 (1964). I dissent from that portion of the majority opinion which totally forbids the use of cannabis by the Coptic Church. In my opinion the state cannot totally prohibit such a practice but may impose reasonable time, place and manner restrictions calculated to protect children and the general public from adverse effects stemming from the practice.
Bona fide members who are adults have a right to worship in the manner that the Coptic Church has done for centuries before the adoption of the United States Constitution or the discovery of America.
I would remand this cause to the trial court with directions to permit bona fide members to use marijuana in actual worship services in a properly zoned church location, subject to the condition that they do not operate automobiles while under the influence of the drug. The court should designate the persons who are to distribute and receive the drug and require strict accounting to prevent misuse of the sacrament.
The courts have a duty to balance the right of free exercise of religion with the right of society to be protected from adverse results of such religious activities.