Carl Eric OLSEN, Petitioner,

v.

DRUG ENFORCEMENT
ADMINISTRATION,
Respondent.

Carl Eric OLSEN, Appellant,

v.

John LAWN, Administrator, Drug
Enforcement Administration.

Nos. 86–1442, 86–5455.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 7, 1989.

Decided June 20, 1989.

Steven J. Routh (appointed by the court) and William A. Bradford, Jr., Washington, D.C., (appointed by the court) were on the amicus curiae brief, on behalf of petitioner/appellant, urging remand. Carl Eric Olsen entered an appearance pro se.

Curtis E. Hall, Asst. U.S. Attorney, with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for respondent/appellee. Mark E. Nagle, Asst. U.S. Atty., Washington, D.C., also entered an appearance for respondent/appellee.

Before RUTH BADER GINSBURG, SILBERMAN, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

Dissenting opinion filed by Circuit Judge BUCKLEY.

RUTH BADER GINSBURG, Circuit Judge:

Petitioner in this case seeks a religious-use exemption from federal laws proscribing marijuana. We hold that the first amendment's free exercise of religion guarantee does not require the requested exemption, and that petitioner was not denied equal protection-establishment clause rights by the government's refusal to accommodate his church's sacramental use of marijuana.

## I.

Petitioner Olsen is a member and priest of the Ethiopian Zion Coptic Church. While the church is alleged to have several thousand members in Jamaica, it has never had more than between 100 and 200 members in the United States. Olsen asserts, and the government concedes for purposes of this case, that the church's sacrament is marijuana; under church teachings, marijuana is combined with tobacco and smoked "continually all day, through church services, through everything we do." *State v. Olsen*, 315 N.W.2d 1, 7 (Iowa 1982) (quoting Olsen's testimony). Olsen and his fellows have been convicted several times in federal and state courts of various marijuana offenses, including importation of twenty tons of the drug, and first amendment challenges to these convictions have been uniformly rejected. *See Olsen v. Iowa*, 808 F.2d 652 (8th Cir.1986); *United States v. Rush*, 738 F.2d 497 (1st Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985); *United States v. Middleton*, 690 F.2d 820 (11th Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983); *State v. Olsen*, 315 N.W.2d 1 (Iowa 1982); *Town v. State ex rel. Reno*, 377 So.2d 648 (Fla.1979), *cert. denied*, 449 U.S. 803, 101 S.Ct. 48, 66 L.Ed. 2d 7 (1980).

The federal convictions were based on the Controlled Substances Act, 21 U.S.C. §§ 801–904 (1982), which lists marijuana as a "Schedule I" controlled substance with a "high potential for abuse." *Id.* § 812(b)(1)(A) & (c). Between 1983 and 1985, Olsen several times petitioned the Drug Enforcement Administration (DEA), which administers the Act, for an exemption permitting his church's sacramental use of marijuana. Olsen maintained that such an exemption is required by the first amendment's guarantee of the free exercise of religion. He further urged, under an establishment clause-equal protection rubric, that his church is entitled to an exemption similar to that granted by federal regulation to the Native American Church for its sacramental use of peyote. *See* 21 C.F.R. § 1307.31 (1987).

In an effort to prompt a response from the DEA, Olsen unsuccessfully sued in the Eleventh Circuit to compel agency action. *Olsen v. DEA*, 776 F.2d 267 (11th Cir.1985) (affirming district court's dismissal of Olsen's complaint), *cert. denied*, 475 U.S. 1030, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986). Thereafter, in January 1986, Olsen petitioned the U.S. District Court for the District of Columbia for a writ of mandamus, and that court, in March 1986, directed the DEA to show cause why the writ should not issue. In April 1986, in a three-paragraph letter ruling, the DEA denied Olsen's petitions; the letter reported the DEA's conclusion that "the immensity of the marijuana abuse problem," and the correspondingly "compelling governmental interest" in controlling trafficking in and use of the substance, "outweighed" the church's interest in access to marijuana. Letter from John C. Lawn, DEA Administrator, to Carl Eric Olsen (Apr. 22, 1986). The district court then dismissed Olsen's mandamus petition as moot.

Olsen, acting *pro se*, both petitioned this court for review of the DEA's decision, and appealed from the district court's dismissal of his mandamus petition. In February

1988, this court, on its own motion, directed appointment of members of the law firm of Hogan and Hartson to serve as amicus curiae "to address those issues raised by [Olsen] and any other issues appropriate for the court's consideration in this case." [1] After amicus filed a brief, the DEA moved to remand the matter for renewed agency consideration. In April 1988, we authorized further agency proceedings and instructed the DEA to supplement the record and return it with a final order by July 29, 1988. On remand, amicus presented Olsen's proposal for a "restrictive religious exemption" that would include the following limitations:

—Church members would be restricted to using marijuana during their Saturday evening prayer ceremony, which lasts from 8:00 p.m. until 11:00 p.m.;

—During that ceremony, and for the eight hours following that ceremony, Church members would not leave the place where the ceremony is conducted; they would not drive automobiles or otherwise go out in public;

—Ingestion of marijuana would be limited to Church members who had reached the age of majority, according to the laws of the state in which the ceremony takes place;

—Ingestion of marijuana would be limited to full Church members who had undergone the confession ritual for entering the Church's community....

Memorandum of Court–Appointed Amicus Curiae in Support and on Behalf of Petitioner Carl E. Olsen at 29–30 (submitted to DEA on remand).

On July 29, 1988, the DEA issued its Final Order, reaffirming its denial of Olsen's exemption requests. That order, which we set out in full as an Appendix to this opinion, first disclaimed statutory authority to grant the exemption. According to the DEA, Congress intended no reli-

gious-use exemption from Controlled Substances Act proscriptions other than the peyote-use permission granted the Native American Church. Next, the DEA assumed, in order to rule completely, that it had authority to consider Olsen's exemption petition. It further accepted, for purposes of its decision, that the Ethiopian Zion Coptic Church is a bona fide religion with marijuana as its sacrament. The agency then rejected Olsen's free exercise claim, concluding that the government has a compelling interest in the regulation of controlled substances and that accommodation to religious use of drugs is not required. Final Order, *infra* pp. 1466–1467.

The DEA also rejected Olsen's establishment clause-equal protection plea, stating why, on the matter in controversy, it deemed the Ethiopian Zion Coptic Church not similarly situated to the Native American Church. *Id.* p. 1467. First, Olsen's church "advocates the continuous use of marijuana or 'ganja', while the Native American Church's use of peyote is isolated to specific ceremonial occasions." *Id.* Second, the DEA reasoned: "[W]hile peyote and marijuana are both Schedule I controlled substances with a defined high *potential* for abuse, the *actual* abuse and availability of marijuana in the United States is many times more pervasive ... than that of peyote." *Id.* p. 1467 (emphasis added). Third, the DEA noted that Olsen was convicted in *Rush* for importing twenty tons of marijuana, "an outrageous quantity to supply [his church's] religious needs." *Id.* The DEA also rejected Olsen's proposal to restrict usage, saying monitoring compliance would be "impractical." *Id.* p. 1468.

The DEA's July 1988 Final Order is now before this court for review.[2]

## II.

The DEA initially asserted in its July 1988 Final Order that Congress had given

---

1. William A. Bradford, Jr. and Steven J. Routh were appointed and filed briefs in support of Olsen's position, with the assistance of Emily E. Moskowitz. Mr. Routh appeared on Olsen's behalf at oral argument. The court commends appointed counsel for work of excellent quality and service in the best tradition of the bar.

2. Because the DEA completely responded to Olsen's exemption petitions in its Final Order, we hold that Olsen's petition for mandamus to compel a response is now moot.

the agency no authority to grant the exemption Olsen sought. Apart from permitting legitimate medical and scientific or research use, the DEA maintained, Congress intended no exemption other than the one, supported in the legislative history of the Controlled Substances Act, for the Native American Church. *Final Order, infra* p. 1466. This argument did not figure in the DEA's original denial of Olsen's petitions; the agency's April 1986 letter ruling, we note, responded immediately and directly to the merits of Olsen's request.

The DEA's contention that Congress directed the Administrator automatically to turn away all churches save one opens a grave constitutional question. A statutory exemption authorized for one church alone, and for which no other church may qualify, presents a "denominational preference" not easily reconciled with the establishment clause. *See Larson v. Valente*, 456 U.S. 228, 245, 102 S.Ct. 1673, 1683–84, 72 L.Ed.2d 33 (1982); *cf. infra* pp. 1463–1464. We resist an interpretation dissonant with the "cardinal principle" that legislation should be construed, if "fairly possible," to avoid a constitutional confrontation. *See Ashwander v. TVA*, 297 U.S. 288, 348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

Furthermore, we recognize that even if the DEA were not empowered or obliged to act, Olsen would be entitled to a judicial audience. Ultimately, the courts cannot escape the obligation to address his plea that the exemption he seeks is mandated by the first amendment's religion clauses. *See Peyote Way Church of God v. Smith*, 742 F.2d 193 (5th Cir.1984) (upholding church's standing to seek a declaratory judgment that denying church access to peyote is unconstitutional). We are aided in this task of judicial review by the consideration given the matter, in the first instance, by the expert administrator.

In sum, for purposes of this case, we accept the position that Congress did not

strip the DEA of authority to rule on the merits of Olsen's petitions,[3] and we turn to the questions whether the free exercise of religion clause or the equal protection principle (coupled with the establishment clause) commands the exemption Olsen seeks.

### III.

Olsen's free exercise claim has been raised, considered, and rejected in the context of criminal proceedings. *See Olsen v. Iowa*, 808 F.2d at 653; *Rush*, 738 F.2d at 512–13; *Middleton*, 690 F.2d at 824–26; *State v. Olsen*, 315 N.W.2d at 7–9; *Town v. State ex rel. Reno*, 377 So.2d at 650–51. We agree, substantially, with those dispositions, and therefore need not treat the issue expansively.

■ It is familiar doctrine that the free exercise clause "embraces two concepts,— freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). As the Supreme Court recently restated:

[T]he Court has rejected challenges under the Free Exercise Clause to governmental regulation of certain overt acts prompted by religious beliefs or principles, for "even when the action is in accord with one's religious convictions, [it] is not totally free from legislative restrictions." *Braunfeld v. Brown*, 366 U.S. 599, 603, 81 S.Ct. 1144, 1146, 6 L.Ed. 2d 563 (1961). The conduct or actions so regulated have invariably posed some substantial threat to public safety, peace or order. *See, e.g., Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1879) [upholding ban on polygamy]; *Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) [compulsory vaccination law]; *Prince v. Massachusetts*,

---

**3.** *But see Olsen v. DEA*, 776 F.2d 267 (11th Cir.1985), *cert. denied*, 475 U.S. 1030, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986) (while the DEA is obliged to respond to all exemption petitions, religious exemption for marijuana use falls outside the scope of 21 U.S.C. § 811). Subsequent to this Eleventh Circuit decision, Olsen broadened beyond 21 U.S.C. § 811 the bases of his exemption claim. *See* Reply Brief of Court–Appointed Amicus Curiae at 7 n. 5.

321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) [child labor law]; *Cleveland v. United States*, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12 (1946) [application of Mann Act to religiously motivated polygamy]. *Employment Division v. Smith*, 485 U.S. 660, 108 S.Ct. 1444, 1450 n. 13, 99 L.Ed.2d 753 (1988) (quoting *Sherbert v. Verner*, 374 U.S. 398, 403, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)).

■ In appraising laws alleged to constrain religious conduct, the Supreme Court has instructed lower courts to consider: (a) whether the law interferes with the free exercise of sincere religious belief; (b) whether the law is essential to accomplish an overriding governmental objective; and (c) whether accommodating the religious conduct would unduly interfere with fulfillment of the governmental interest. *See United States v. Lee*, 455 U.S. 252, 256–59, 102 S.Ct. 1051, 1054–56, 71 L.Ed.2d 127 (1982); *Rush*, 738 F.2d at 512. The first two factors stated in *Lee* are not contested in this case. The DEA, "[f]or purposes of this decision ... accepts that the Ethiopian Zion Coptic Church is a bona fide religion whose sacrament is marijuana." Final Order, *infra* p. 1466. And "Olsen does not dispute the government's compelling interest in controlling the distribution and drug-related use of marijuana." Brief of Court–Appointed Amicus Curiae at 18. Indeed, "[e]very federal court that has considered the matter, so far as we are aware, has accepted the congressional determination that marijuana in fact poses a real threat to individual health and social welfare." *Rush*, 738 F.2d at 512.

■ The pivotal issue, therefore, is whether marijuana usage by Olsen and other members of his church can be accommodated without undue interference with the government's interest in controlling the drug. Three circuits have so far considered pleas for religious exemption from the marijuana laws; each has rejected the argument that accommodation to sacramental use of the drug is feasible and therefore required. *Rush*, 738 F.2d at 513 (First Circuit); *Olsen v. Iowa*, 808 F.2d at 653 (Eighth Circuit); *Middleton*, 690 F.2d

at 825 (Eleventh Circuit). We have no reason to doubt that these courts have accurately gauged the Highest Court's pathmarks in this area.

Olsen refers to his proposal for restrictive use, *see supra* p. 1460, and claims that this case is now differently contoured than earlier ones. Even if the government is not required to accommodate to the extent of allowing a broad religious exemption, he argues, it can and must accommodate to the time- and place-specific use he has proposed. Because the tenets of the Ethiopian Zion Coptic Church endorse marijuana use every day throughout the day, however, Olsen's proposal for confined use would not be self-enforcing. It is hardly unreasonable to forecast a large monitoring burden in light of evidence that in years past, the church's "[c]hecks on distribution of cannabis to nonbelievers in the faith [were] minimal," there was "easy access to cannabis for a child who had absolutely no interest in learning the religion," and "[m]embers [partook] of cannabis anywhere, not just within the confines of a church facility." *Town v. State ex rel. Reno*, 377 So.2d at 649, 651.

Critically, Olsen's proposal would require the government to make supplies of marijuana available to Olsen's church on a regular basis. *See* Reply Brief of Court–Appointed Amicus Curiae at 7, 17. We are unaware of any "free exercise" precedent for compelling government accommodation of religious practices when that accommodation requires burdensome and constant official supervision and management. *Cf. Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (religious exemption from compulsory school law at issue imposed no toll on the state); *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (payment of unemployment compensation to person fired for refusing to work on Saturday Sabbath required no administrative mechanism other than the one already in place); *Leahy v. District of Columbia*, 833 F.2d 1046, 1049 n. 6 (D.C.Cir.1987) (noting plaintiff Leahy's observation that government could readily accommodate religious objection to use of

social security number in driver's license application, "for the city already had in place an alternate system of numbers, used for issuing diplomatic driver's licenses").[4]

In sum, we conclude that the DEA cannot accommodate Olsen's religious use of marijuana without unduly burdening or disrupting enforcement of the federal marijuana laws. We therefore hold that the free exercise clause does not compel the DEA to grant Olsen an exemption immunizing his church from prosecution for illegal use of marijuana.

## IV.

■ In addition to the argument that the free exercise clause *requires* government accommodation to sacramental use of marijuana by members of the Ethiopian Zion Coptic Church, Olsen asserts an establishment clause-equal protection challenge. He maintains that members of his church are entitled to a religious exemption from the marijuana laws on the same terms as the peyote exemption granted the Native American Church. *See* 21 C.F.R. § 1307.31 ("The listing of peyote as a controlled substance in Schedule I does not apply to the nondrug use of peyote in bona fide religious ceremonies of the Native American Church, and members of the Native American Church so using peyote are exempt from registration."). Olsen has urged before that members of his church are similarly situated to the beneficiaries of the exemption prescribed in 21 C.F.R. § 1307.31. *See Olsen v. Iowa*, 808 F.2d at 653; *Rush*, 738 F.2d at 513. We join our sister courts in rejecting this plea. Indeed, had the DEA timely objected, we might have held the issue precluded. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).[5]

The DEA has cogently explained why a tightly-cabined exemption for peyote use in a religious rite need not mean that religious use of marijuana (or any other widely used controlled substance) must be accommodated:

[T]he actual abuse and availability of marijuana in the United States is many times more pervasive ... than that of peyote.... The amount of peyote seized and analyzed by the DEA between 1980 and 1987 was 19.4 pounds. The amount of marijuana seized and analyzed by the DEA between 1980 and 1987 was 15,302,-468.7 pounds. This overwhelming difference explains why an accommodation can be made for a religious organization which uses peyote in circumscribed ceremonies, and not for a religion which espouses continual use of marijuana.

Final Order, *infra* p. 1467.

We agree that the vast difference in demand for marijuana on the one hand and

---

**4.** Amicus cites the permission for medical and scientific research use of marijuana as evidence that a religious accommodation can be arranged without undue burden to the government. *See* Brief of Court-Appointed Amicus Curiae at 7–9, 21. We think the tightly-drawn, closed system for access to controlled substances by, or on the order of, medical doctors and researchers cannot tenably be compared to the permission sought here. Government may allow use of marijuana in programs to lessen the negative side-effects of chemotherapy and to treat glaucoma, for example, without thereby opening the way to licenses for the use of marijuana by the healthy.

    Amicus also cites the peyote exemption accorded the Native American Church as affording "reason ... to believe that a workable accommodation exists in this case." *Id.* at 21. This argument is addressed *infra* in the context of Olsen's establishment clause-equal protection claim.

**5.** The dissent describes Olsen as choosing "an Establishment Clause battleground" in preference to an equal protection one. Dissent at 1468. Olsen's own petitions to the DEA, however, featured equal protection. *See* Brief of Court-Appointed Amicus Curiae at App. 7, 19 ("I would like you to respond to the issue of equal protection.... Why are you discriminating against my religion by denying the same benefits which are given to the sacramental uses of peyote and wine?"). Court-appointed amicus curiae, it is true, did put the comparison with the Native American Church under an establishment clause headline, drawing strength from the Supreme Court's characterization in *Larson v. Valente*, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982).

    We do not believe the label consequential. As court-appointed amicus recognized, in cases of this character, establishment clause and equal protection analyses converge. *See Walz v. Tax Comm'n*, 397 U.S. 664, 694, 696, 90 S.Ct. 1409, 1425, 25 L.Ed.2d 697 (1970) (Opinion of Harlan, J.) (establishment clause requirement of neutrality "in its application requires an equal protection mode of analysis").

peyote on the other warranted the DEA's response to Olsen's petition. Were the DEA to consider a marijuana exemption, equal protection (and/or the establishment clause, *see supra* note 5) would indeed appear to command that it do so evenhandedly. *See Larson v. Valente*, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982); *cf. Kennedy v. Bureau of Narcotics and Dangerous Drugs*, 459 F.2d 415 (9th Cir. 1972) (petitioning church not entitled to peyote-use exemption that leaves non-exempt other churches that use peyote in bona fide religious ceremonies), *cert. denied*, 409 U.S. 1115, 93 S.Ct. 901, 34 L.Ed. 2d 699 (1973). The DEA would have no warrant to contain the exemption to a single church or religion. *See, e.g., Randall v. Wyrick*, 441 F.Supp. 312 (W.D.Mo.1977) (Aquarian Brotherhood Church); *Whyte v. United States*, 471 A.2d 1018, 1020 (D.C. 1984) (Rastafarians); *State v. Rocheleau*, 142 Vt. 61, 451 A.2d 1144, 1148–49 (1982) (practitioners of Tantric Buddhism).

■ Even if we were to credit Olsen's equal protection argument or the dissent's portrayal of it in terms of the establishment clause, the remedy Olsen requests hardly follows. Faced with the choice between invalidation and extension of any controlled-substances religious exemption, which would the political branches choose? It would take a court bolder than this one to predict, as our dissenting colleague appears to suggest, that extension, not invalidation, would be the probable choice. *Compare Califano v. Westcott*, 443 U.S. 76, 89–93, 99 S.Ct. 2655, 2663–65, 61 L.Ed. 2d 382 (1979) (majority opinion) *with id.* at 94–96 (Powell, J., dissenting). *See generally* Miller, *Constitutional Remedies for Under-inclusive Statutes: A Critical Appraisal of* Heckler v. Mathews, 20 HARV. C.R.–C.L. L.REV. 79 (1985); Ginsburg, *Some Thoughts on Judicial Authority to Repair Unconstitutional Legislation*, 28 CLEVE.ST.L.REV. 301 (1979).

While we rest our decision on the immensity of the marijuana control problem in the United States, we note some further distinctions. The peyote exemption was accorded to the Native American Church for a traditional, precisely circumscribed ritual. In that ritual, the peyote itself is an object of worship; for members of the Native American Church, use of peyote outside the ritual is sacrilegious. *See People v. Woody*, 61 Cal.2d 716, 40 Cal Rptr. 69, 73, 394 P.2d 813, 817 (1964). Thus the church, for all purposes other than the special, stylized ceremony, reinforced the state's prohibition. In contrast, the Ethiopian Zion Coptic Church, as earlier observed, teaches that marijuana is properly smoked "continually all day," as Olsen himself stated, "through everything that we do." *State v. Olsen*, 315 N.W.2d at 7; *see also Town v. State ex rel. Reno*, 377 So.2d at 649. True, for purposes of the exemption requested, Olsen narrowed the permission he sought to track the one accorded the Native American Church. *See* Memorandum of Court–Appointed Amicus Curiae in Support and on Behalf of Petitioner Carl E. Olsen at 29–30 (submitted to DEA on remand). But "narrow" use, concededly, is not his religion's tradition.

We mention too—but express no opinion concerning—the view of the First Circuit that the peyote exemption is bound up with the federal policy of preserving Native American culture, and thus can be comprehended properly only "[i]n light of the *sui generis* legal status of American Indians." *Rush*, 738 F.2d at 513; *accord Peyote Way Church of God v. Meese*, 698 F.Supp. 1342, 1346–49 (N.D.Tex.1988) (Native American Church is "the only one of its own kind" and exemption afforded it since 1965 "cannot be expanded to include non-Native American Church use of peyote"), *appeal filed*, Dec. 22, 1988; *United States v. Warner*, 595 F.Supp. 595, 600–01 (D.N.D.1984) (exemption for Native American Church is tied to fulfillment of "government's unique obligation" to preserve Indian culture). *Contra Native American Church of New York v. United States*, 468 F.Supp. 1247 (S.D.N.Y.1979) (peyote exemption must be made available to another church if in fact it similarly uses peyote for sacramental purposes), *aff'd mem.*, 633 F.2d 205 (2d Cir.1980).

In sum, assuming arguendo the legitimacy of an exemption for religious use of

peyote,[6] we are persuaded that the Executive was not obliged by the Constitution to spread that exemption to church-users of marijuana.

### CONCLUSION

For the reasons stated, in No. 86–1442 we deny Olsen's petition for review and affirm on the merits the DEA's July 1988 Final Order; and in No. 86–5455 we declare Olsen's petition for a writ of mandamus moot and properly dismissed on that basis.

*It is so ordered.*

### APPENDIX

### UNITED STATES DEPARTMENT OF JUSTICE DRUG ENFORCEMENT ADMINISTRATION

In the Matter of

PETITION OF CARL E. OLSEN FOR THE ETHIOPIAN ZION COPTIC CHURCH FOR AN EXEMPTION FROM THE CONTROLLED SUBSTANCES ACT

On Remand From the United States Court of Appeals for the District of Columbia Circuit

No. 86–1442

### FINAL ORDER

This order is issued pursuant to an Order from the United States Court of Appeals for the District of Columbia Circuit which remanded the matter of a petition from Carl Eric Olsen on behalf of the Ethiopian Zion Coptic Church to the Drug Enforcement Administration (DEA) in order to construct a complete record for review.

On April 22, 1986, the Administrator of DEA denied Mr. Olsen's request for an exemption from the Controlled Substances Act for use of marijuana for religious purposes by the Ethiopian Zion Coptic Church. Mr. Olsen petitioned the United States Court of Appeals for the District of Columbia Circuit for review of the Administrator's denial. The Court remanded the matter to the DEA for further findings and a more complete record for review. Pursuant to the Court's Order, agency counsel requested Mr. Olsen and the law firm of Hogan & Hartson, appointed amicus curiae by the Court, to present any documents, evidence or arguments which they wished the Administrator to consider in rendering a final decision.

Hogan & Hartson submitted a Memorandum of Law with attachments. Counsel for DEA has also provided the Administrator with a Memorandum of Law and attached documents. The Administrator has considered the evidence before him, and hereby renders a final decision.

In his petition for exemption to use of marijuana for religious purposes, Mr. Olsen requests an exemption similar to that granted to the Native American Church for use of peyote in bona fide religious ceremonies. This exemption is found in Title 21, Code of Federal Regulations, Section 1307.-31. Mr. Olsen cites Constitutional principles relating to the Free Exercise Clause of the First Amendment and Equal Protection as the basis for his request. He also out-

---

6. Several state courts have held that the free exercise clause compels the government to exempt from criminal sanctions the use of peyote by members of the Native American Church. *See Smith v. Employment Div.*, 307 Or. 68, 763 P.2d 146, 148 (1988), *cert. granted,* — U.S. —, 109 S.Ct. 1526, 103 L.Ed.2d 832 (1989); *Whitehorn v. State*, 561 P.2d 539 (Okla.Crim.App. 1977); *State v. Wittingham*, 19 Ariz.App. 27, 504 P.2d 950 (Ct.App.1973), *cert. denied*, 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 667 (1974); *People v. Woody*, 61 Cal.2d 889, 40 Cal.Rptr. 69, 394 P.2d 813 (1964). *But see State v. Bullard*, 267 N.C. 599, 148 S.E.2d 565 (1966) (rejecting peyote user's free exercise claim), *cert. denied*, 386 U.S. 917, 87 S.Ct. 876, 17 L.Ed.2d 789 (1967); *State v. Big Sheep*, 75 Mont. 219, 243 P. 1067 (1926) (same). The issue is *sub judice* before the Supreme Court in *Smith*. Federal courts of appeals have *not yet* ruled definitively on the question. *See Warner v. Graham*, 845 F.2d 179, 183 (8th Cir.1988) (member of Native American Church was discharged from state employment because of her use of peyote; court upheld defendants' qualified immunity plea to constitutional tort claim because it could not say discharge violated a "clearly established" first amendment right); *Peyote Way Church of God v. Smith*, 742 F.2d 193, 201 (5th Cir.1984) (remanding for further factfinding claim for peyote exemption made by church unaffiliated with Native American Church), *on remand sub nom. Peyote Way Church of God v. Meese*, 698 F.Supp. 1342 (N.D.Tex.1988) (dismissing claim on the merits), *appeal filed*, Dec. 22, 1988.

lines the history of the Ethiopian Zion Coptic Church and its use of marijuana as a sacrament. For the reasons that follow, Mr. Olsen's request is denied.

The Administrator finds that he does not have the authority to grant the exemption requested by Mr. Olsen. The Administrator's authority to conduct rulemaking and to make waivers to regulatory and statutory provisions of the Controlled Substances Act is specifically circumscribed by that Act. The Controlled Substances Act contemplates legitimate manufacturing, distribution and use of controlled substances for medical, scientific and research purposes.

The Controlled Substances Act provides that all persons who desire to manufacture, distribute or dispense controlled substances must obtain a registration to do so. The Attorney General is authorized to waive the requirement of registration if he finds that it is in the public interest. The terms manufacture, distribute and dispense are defined in the Controlled Substances Act and contemplate activity involving medical and scientific use of controlled substances. Neither manufacturing, distribution or dispensing contemplates the possession of controlled substances for other than legitimate medical or research purposes.

The Administrator does not have inherent authority to make exemptions to the statute. In granting the exemption for the Native American Church, the Director of the Bureau of Narcotics and Dangerous Drugs (BNDD) relied upon the intentions of Congress in the legislative history of the Controlled Substances Act for his authority.

The courts have found that the Administrator has authority to schedule substances under the Controlled Substances Act. This authority was granted to the Attorney General by Congress with specific criteria and procedural requirements for scheduling. The authority was subsequently delegated to the Administrator by the Attorney General as provided by the Act. See: 21 U.S.C. § 871(a). The criminal sanctions of the Act are dependent upon a substance being scheduled, and into which schedule it

is placed. The criteria for scheduling do not include provisions for religious use. There is no mechanism for an exemption to scheduling for religious purposes. The courts have closely reviewed the Administrator's scheduling of substances, and have recently held that he did not have the authority to temporarily schedule a substance without a specific delegation from the Attorney General. If the courts refuse to expand the Administrator's authority under the Act to permit temporary scheduling which imposes criminal sanctions, it is expected they would refuse to expand the Administrator's authority to waive those same criminal sanctions without specific authorization.

Because of the possibility that the United States Court of Appeals for the District of Columbia may find that the Administrator does have the authority to grant a religious exemption to the provisions of the Controlled Substances Act, the Administrator will also address the issue of whether the Ethiopian Zion Coptic Church should be granted an exemption for the use of marijuana for religious purposes.

In the Memorandum of Law filed on behalf of Mr. Olsen in this matter, Mr. Olsen represents that he has been denied basic procedural due process because no hearing has been held. Where there is no issue of fact to be decided, and no statutory requirement for a hearing, a hearing is not necessary. For purposes of this decision, the Administrator accepts that the Ethiopian Zion Coptic Church is a bona fide religion whose sacrament is marijuana. The Administrator also accepts Mr. Olsen's representations of the method and manner of use of marijuana by members of the church. The acceptance of these facts means there are no facts in dispute, and, therefore, no necessity for a hearing.

The Administrator finds that the federal courts that have interpreted the Free Exercise Clause of the First Amendment to the Constitution have held that an individual's religious practices may be curtailed by government statute or requirement if the government can show that its action serves a compelling state interest. See: *Bowen v.*

*Roy,* 476 U.S. 693 (1986); *United States v. Lee,* 455 U.S. 252 (1982). The government must make a reasonable effort to accommodate the religious practice, but it is not always possible to make such accommodation, nor is it Constitutionally required. The lower courts have found, in cases where religious practices were raised as a defense to criminal drug charges, that the government has a compelling state interest in the regulation of controlled substances and that accommodation is not usually possible. The cases addressing the religious use of marijuana are consistent in finding that the Free Exercise Clause does not require the government to permit religious use of controlled substances. Beginning with *Leary v. United States,* 383 F.2d 851 (5th Cir.1967), *rev'd on other grounds,* 395 U.S. 6 (1969), the federal appellate courts have found that the government has a compelling interest in controlling marijuana use. See: *United States v. Spears,* 443 F.2d 895 (5th Cir.1971), *cert. denied,* 404 U.S. 1020 (1972); *United States v. Middleton,* 690 F.2d 820 (11th Cir.1982), *cert. denied,* 460 U.S. 1051 (1983); *United States v. Rush,* 738 F.2d 497 (1st Cir.1984), *cert. denied,* 471 U.S. 1120 (1985) and *Olsen v. State of Iowa,* 808 F.2d 652 (8th Cir.1986). It should be noted that the Petitioner in this matter, Mr. Olsen, was an appellant in both the *Rush* and *Olsen* cases, in which he raised his religious use of marijuana in defense of criminal charges involving possession and trafficking in marijuana. The *Middleton* case involved a defendant who was a member of the Ethiopian Zion Coptic Church.

While Mr. Olsen maintains that these cases are not relevant to the Administrator's decision because they involve the defense of a criminal charge, the Administrator finds that they are indeed relevant in that the courts discuss the very Constitutional issues which must be addressed in this matter. In addition to finding that the members of these religions had no Free Exercise guarantee to use controlled substances for religious purposes, the courts also found that as a matter of equal protection, these individuals' religions were not entitled to the same exemption as that given by DEA to the Native American Church for use of peyote for bona fide religious purposes. In finding that members of the Ethiopian Zion Coptic Church are not entitled to the same exemption as the Native American Church, the courts have made a distinction between the practices of the Native American Church and other churches, and the court in *Rush* stated, "we think the Ethiopian Zion Coptic Church cannot be deemed similarly situated to the Native American Church for equal protection purposes." *United States v. Rush,* 738 F.2d 497, 513 (1st Cir.1984), *cert. denied,* 471 U.S. 1120 (1985). The Administrator finds that there is indeed a distinction between the practices of the Native American Church and the Ethiopian Zion Coptic Church. Mr. Olsen has stated that the Ethiopian Zion Coptic Church advocates the continuous use of marijuana or "ganja", while the Native American Church's use of peyote is isolated to specific ceremonial occasions.

In addition, the Administrator finds that while peyote and marijuana are both Schedule I controlled substances with a defined high potential for abuse, the actual abuse and availability of marijuana in the United States is many times more pervasive in American society than that of peyote. The statistics of DEA confirm this conclusion. The amount of peyote seized and analyzed by the DEA between 1980 and 1987 was 19.4 pounds. The amount of marijuana seized and analyzed by the DEA between 1980 and 1987 was 15,302,468.7 pounds. This overwhelming difference explains why an accommodation can be made for a religious organization which uses peyote in circumscribed ceremonies, and not for a religion which espouses continual use of marijuana. The Administrator also notes that Mr. Olsen's conviction in *United States v. Rush* involved the illegal importation of 20 tons of marijuana. Mr. Olsen and the other 19 defendants all claimed to be members of the Ethiopian Zion Coptic Church and raised the religious use of marijuana as a defense to criminal charges. If Mr. Olsen's assertions that the Ethiopian Zion Coptic Church in the United States has

never had, "more than between 100 and 200 members in this country," (Petitioner's Memorandum at page 11), 20 tons of marijuana would be an outrageous quantity to supply their religious needs.

Mr. Olsen submits that his church will submit to a reasonable accommodation to their use of marijuana, limiting its ingestion to specific days and specific time periods. Given the large amounts of marijuana available in this country, and the difficulty the DEA would have in trying to monitor compliance which [sic] such a requirement, the Administrator finds that accommodation is impractical. The public interest dictates that the exemption granted for religious use of peyote to the Native American Church should not be expanded to include marijuana for the Ethiopian Zion Coptic Church, or any other religion.

Based upon the record in this proceeding, the legal precedents, and for the reasons outlined, the Petition by Carl Eric Olsen submitted on behalf of the Ethiopian Zion Coptic Church for an exemption to the Controlled Substances Act to use marijuana for religious purposes, is hereby denied.

/s/ John C. Lawn
JOHN C. LAWN
Administrator

Dated: July 26, 1988

BUCKLEY, Circuit Judge, dissenting:

I dissent because the majority fails to address the Establishment Clause implications of the Drug Enforcement Agency's rejection of Olsen's request for a limited religious exemption. That denial creates a clear-cut denominational preference in favor of the Native American Church, which has been granted such an exemption. As the agency has not adequately explained why the Ethiopian Zion Coptic Church must not be accorded comparable treatment, I would grant Olsen's petition for review on the Establishment Clause claim and remand to the agency.

## I.

The majority treats Olsen's denominational preference claim as an equal protection challenge rather than as one involving the Establishment Clause. Majority Opinion ("Maj. op.") at 1463–65. While the Supreme Court has at times discussed the principle of neutrality among religions in terms of equal protection rights, *see, e.g., Fowler v. Rhode Island,* 345 U.S. 67, 70, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953) (Frankfurter, J., concurring), Olsen's choice of an Establishment Clause battleground is consistent both with the facts of this case and with the Supreme Court's more recent precedent that applies the Establishment Clause to denominational preferences (*see Larson v. Valente,* 456 U.S. 228, 244 *et seq.,* 102 S.Ct. 1673, 1683 *et. seq.,* 72 L.Ed. 2d 33 (1982)).

## II.

Although certain aspects of the Supreme Court's Establishment Clause jurisprudence are complex, the doctrine applicable in this particular case is straightforward. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Id.* at 244, 102 S.Ct. at 1683; *see also Everson v. Board of Educ.,* 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947) ("The 'establishment of religion' clause ... means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another."). When we are presented with government action "granting a denominational preference, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitutionality." *Larson,* 456 U.S. at 246, 102 S.Ct. at 1684.

In the instant case, the DEA has permitted the Native American Church to make sacramental use of a drug listed as a Schedule I controlled substance under the Controlled Substances Act, but denied the Ethiopian Zion Coptic Church a similar accommodation. This denominational preference constitutes a violation of the Establishment Clause *unless* the DEA is able to demonstrate that "it is justified by a compelling governmental interest ... and ...

is closely fitted to further that interest."
*Larson,* 456 U.S. at 247, 102 S.Ct. at 1685.

## III.

The DEA asserts that it does not have the inherent authority to grant exemptions, and that "[i]n granting the exemption for the Native American Church, the [DEA's predecessor] relied upon the intentions of Congress in the Controlled Substances Act for its authority." * *In the Matter of Petition of Carl E. Olsen for the Ethiopian Zion Coptic Church,* Final Order (July 26, 1988) ("Final Order"), *supra* at 1466. On appeal, the agency also implies, DEA Brief at 24, that the Native American Church is to be distinguished not on the basis of its religious character, but on "the *sui generis* legal status of American Indians" (quoting *United States v. Rush,* 738 F.2d 497, 513 (1st Cir.1984)).

Neither explanation is relevant. Whatever the DEA's authority to grant exemptions, it has in fact granted one to the Native American Church. Furthermore, that Church's status as an indigenous faith does not affect its religious character. As the Department of Justice's Office of Legal Counsel wrote when reviewing the Native American Church's exemption:

> [T]he special treatment of Indians under our law does not stem from the unique features of Indian religion or culture. With respect to these matters, Indians stand on no different footing than do other minorities in our pluralistic society. Rather, the special treatment of Indians is grounded in their unique status as political entities, formerly sovereign na-

tions preexisting the Constitution, which still retain a measure of inherent sovereignty over their peoples unless divested by federal statute or by necessary implication of their dependent status. *See United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).

> An exemption for Indian religious use of peyote would not be grounded in the unique political status of Indians. Instead, the exemption would be based on the special culture and religion of the Indians. In this respect, Indian religion cannot be treated differently than other religions similarly situated without violation of the Establishment Clause.

Memorandum Opinion for the Chief Counsel, Drug Enforcement Administration, *Peyote Exemption for Native American Church* 403, 419 (Dec. 22, 1981), *reprinted as* attachment 16 of Memorandum of Court–Appointed Amicus Curiae in Support and on Behalf of Petitioner Carl E. Olsen (submitted to DEA on remand) ("Amicus Memorandum").

As the United States Government unquestionably has granted the Native American Church an accommodation that it has declined to extend to the Ethiopian Zion Coptic Church, it has the burden of demonstrating that its action was required by its paramount responsibility for the control of drugs. I submit that the DEA's explanation in its Final Order falls far short of meeting *Larson's* strict scrutiny standard.

In its discussion of the issues implicated by the Establishment Clause, the DEA finds two points of distinction between the Native American Church and the Ethiopian

---

\* It is by no means certain that the present exemption has its origin in a congressional mandate rather than in an agency determination that it was constitutionally required. As the DEA notes in its brief, DEA Brief at 4–5 n. 4, the first regulation exempting the Native American Church's use of peyote was issued *following the* enactment of the Drug Abuse Control Amendments of 1965. Shortly before final House action on the bill, the Chairman of the House Committee on Interstate and Foreign Commerce, Congressman Harris, introduced a letter from the Food and Drug Administration (the agency then concerned with drug enforcement) in support of his recommendation that his colleagues accept a Senate amendment striking a

House provision exempting the sacramental use of peyote. The letter contains the following statement:

> If the church is a bona fide religious organization that makes sacramental use of peyote, then it would be our view that H.R. 2, even without the peyote exemption which appeared in the House-passed version, could not forbid bona fide religious use of peyote. We believe that the constitutional guarantee of religious freedom fully safeguards the rights of the organization and its communicants.

111 Cong.Rec. 15,977–78 (1965). The House concurred in the Senate amendment immediately thereafter. *Id.* at 15,778.

Zion Coptic Church. The first turns on differences between the practices of the two churches as they relate to the use of peyote and marijuana; the second hinges on the differences in the law enforcement problems posed by the two drugs.

The first distinction is addressed in a single sentence: "Mr. Olsen has stated that the Ethiopian Zion Coptic Church advocates the continuous use of marijuana or 'ganja', while the Native American Church's use of peyote is isolated to specific ceremonial occasions." Final Order, *supra* at 1467. The problem with this statement is that it wholly ignores the stringent restrictions on the members' sacramental use of marijuana that would be imposed by the terms of the limited religious exemption requested by Olsen. *See* Maj. op. at 1460. The DEA later acknowledges that Olsen has proposed limiting the use of marijuana "to specific days and specific time periods," but dismisses the proposal because of "the large amounts of marijuana available in this country, and the difficulty the DEA would have in trying to monitor compliance" with the stipulated restrictions. Final Order, *supra* at 1468. Without more, I find this explanation utterly unsatisfactory as any member of the Church found in possession of the drug outside the limited hours and place set aside for its ceremonial use would not be shielded by the exemption.

Moreover, the restrictions proposed by Olsen, which are similar to those imposed by the Native American Church on the sacramental use of peyote, clearly distinguish this case from those cited by the DEA (*id.* at 1467–68) and the majority (Maj. op. at 1463) to show that other circuits have rejected comparable claims advanced on behalf of the Ethiopian Zion Coptic Church. None of those cases involved the facts now before us: the denial of a request for a limited, prospective exemption from the Controlled Substances Act that the government had already granted another denomination.

The second distinction made by the DEA, and the one that the majority finds compelling, is the dramatic disparity between our society's abuse of the two substances as illustrated by the fact that 19.4 pounds of peyote were seized by the DEA between 1980 and 1987 in contrast to the 15,302,-468.7 pounds of marijuana seized during the same period. Final Order, *supra* at 1467. "This overwhelming difference," the DEA asserts, "explains why an accommodation can be made for a religious organization which uses peyote in circumscribed ceremonies, and not for a religion which espouses continual use of marijuana." *Id.* With all respect to the DEA and my colleagues, I must demur. The difference in pounds seized is indeed overwhelming but, again, the explanation is not.

The government's interest in preventing abuse of a given drug is not proportional to the drug's prevalence. By classifying both marijuana and peyote as Schedule I controlled substances, Congress has determined that the federal government has a compelling interest in preventing the illegal distribution and use of both drugs. Moreover, this quantitative justification, standing alone, is difficult to reconcile with *Larson*. In that case, the Supreme Court invalidated a provision of a Minnesota statute exempting religious organizations that receive more than fifty percent of their funds from members ("fifty percent rule") from certain registration and reporting requirements imposed on charitable organizations engaged in fundraising. The practical consequence of this provision was to confer a preference on well-established denominations. Applying strict scrutiny to the State's justification of the preference, the Court conceded Minnesota's compelling interest in protecting its citizens from abusive solicitation practices but concluded that it had failed to demonstrate that the fifty percent rule was closely fitted to further that interest. 456 U.S. at 251, 102 S.Ct. at 1686–87.

Minnesota justified the rule on the ground that it could be assumed that members of religious organizations exercise control over both the internal solicitation of contributions and the expenditure of the funds that they contribute. *Id.* at 248, 102 S.Ct. at 1685. The State asserted that where these safeguards do not exist, public

disclosure is necessary. *Id.* The Court rejected this justification for three reasons. First, it determined that the State had failed to provide any evidence demonstrating that members of religious organizations "will effectively *control* the organization if they contribute more than half of its solicited income," *id.* at 249, 102 S.Ct. at 1686 (emphasis original); second, the State had not supported its assumption "that membership control is an adequate safeguard against abusive solicitations of the public by the organization," *id.* at 250, 102 S.Ct. at 1686; and third, the Court rejected a premise behind the fifty percent rule—that the need for public disclosure corresponds to the percentage of nonmember contributions. *Id.* at 251, 102 S.Ct. at 1686–87.

The Supreme Court's detailed scrutiny of Minnesota's justification of the fifty percent rule underscores the superficiality of the DEA's justification of its denominational preference in this case. The DEA offers no reason why it could not have tailored a closer fit than its out-of-hand denial of the requested exemption. The DEA finds no difficulty in monitoring the compliance by the more than 250,000 members of the Native American Church with the limited use of peyote permitted for ceremonial purposes, and the majority offers good reasons why this should be so. Maj. op. at 1464. Yet the only reason the agency gives for concluding that monitoring compliance by the estimated one to two hundred communicants of the Ethiopian Zion Coptic Church living in the United States (Amicus Memorandum at 11) should be more difficult is that our streets are awash in marijuana. Without further explanation, I find this reasoning less than compelling. As in the case of the Native American Church, the exemption would place no restriction on the agency's normal enforcement activities beyond the parameters of the Church's place of worship during the limited number of hours in which the sacramental use of marijuana would be permitted.

The majority notes a significant problem the DEA might face if it were to grant Olsen's request:

Were the DEA to consider a marijuana exemption, equal protection (and/or the establishment clause ...) would indeed appear to command that it do so evenhandedly. The DEA would have no warrant to contain the exemption to a single church or religion.

Maj. op. at 1464 (citations omitted). I find the majority's "opening the floodgate" argument more persuasive than anything the DEA has offered. It is for the agency, however, to make the argument and to explain why it would find itself unable to cope with the flood of similar applications, not for us to speculate about them.

Finally, the majority supports the denial of the exemption to Olsen by arguing that

Even if we were to credit Olsen's equal protection argument or the dissent's portrayal of it in terms of the establishment clause, the remedy Olsen requests hardly follows. Faced with the choice between invalidation and extension of any controlled-substances religious exemption, which would the political branches choose? It would take a court bolder than this one to predict, as our dissenting colleague appears to suggest, that extension, not invalidation, would be the probable choice.

Maj. op. at 1464. I have two responses. First, the Supreme Court has consistently recognized that conceptual problems regarding appropriate remedial actions do not relieve us of our obligation to review government classifications that are impermissibly underinclusive. *See, e.g., Arkansas Writer's Project, Inc. v. Ragland,* 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987) (finding Arkansas statute unconstitutionally underinclusive). Second, we would not be called upon to make the choice the majority describes if, as I believe appropriate, we were to remand the case to the DEA for further consideration in light of its Establishment Clause implications.

## IV.

The DEA has chosen to accommodate one religion but not another. The Establishment Clause compels the agency to justify its distinction and requires us to scrutinize the agency's rationale strictly. Given this demanding standard of review, I must

conclude that the agency has failed to satisfy its burden. Accordingly, I would grant Olsen's petition for review and remand to the agency for reconsideration without reaching Olsen's Free Exercise challenge.