576 So.2d 864 (1991)
The State of Florida, DEPARTMENT OF LEGAL AFFAIRS, Petitioner,
v.
Reverend Henry JACKSON, etc., Respondent.
No. 90-1042.
District Court of Appeal of Florida, Third District.
March 19, 1991.
Robert A. Butterworth, Atty. Gen., and Louis F. Hubener, Asst. Atty. Gen., for petitioner.
Rubin, Rubin & Fuqua and Ellis Rubin, A. Hinda Klein, for respondent.
Before BARKDULL, LEVY and GERSTEN, JJ.
LEVY, Judge.
The State of Florida, Department of Legal Affairs ["Department"] petitions this court for a writ of certiorari to quash the lower court order setting aside subpoenas it issued to investigate the records and activities of Reverend Henry Jackson pursuant to the Deceptive and Unfair Trade Practices Act, Section 501.203(1), Florida *865 Statutes (1989).[1] We grant the Department's Petition for Certiorari and quash the trial court's order setting aside the subpoenas.
The respondent, Jackson, solicited cash and money-order contributions by mail. These solicitations were sent by Jackson from Hialeah, Florida, to individuals in Florida and throughout the United States. In exchange for these contributions, Jackson promised to send the contributor winning lottery numbers he represented were revealed to him by God. Jackson represented that, for the sum of $12.00, the contributor would receive a "financial blessing from God" in the form of a winning lottery number.
After numerous complaints, both inside and outside of Florida, the Department issued an administrative subpoena and subpoena duces tecum, dated March 22, 1989, pursuant to the Florida Deceptive and Unfair Trade Practices Act. Many of the complaints noted that after contributing the $12.00 to Jackson, the "red-hot" numbers were not winning numbers at all. The majority of these solicitations were sent to individuals living in states with lotteries.
These subpoenas were an initial part of the Department's investigative process in determining whether Jackson had violated any of the proscribed activities delineated by the Act, or, at the very least, to determine if the Act was applicable at all to Jackson's activities. The subpoenas ordered Jackson to appear before an assistant attorney general and produce various records to determine whether Jackson's business practices were in violation of the Act. Jackson filed a petition to set aside the subpoenas. The trial court set aside the subpoenas on the ground that Section 501.203(1) did not apply to Jackson's activities, and the Department now appeals.
Among the Department's contentions, it argues that, based upon the complaints it received, it has a sufficient reason to investigate Jackson's activities. We agree with the Department on this point. The subpoenas issued by the Department were merely investigative in nature and the Department had a right to a careful review of the documents. It may be the case that, after a careful review of the documents and records subpoenaed, the Department might choose not to pursue further actions regarding Jackson's activities. See R.W. v. Department of Professional Regulation, Board. of Osteopathic Medical Examiners, 566 So.2d 26 (Fla. 3d DCA 1990); Winfield v. Div. of Pari-Mutuel Wagering, Department of Business Regulation, 477 So.2d 544 (Fla. 1985). We need not render a final determination at this juncture as to whether or not Jackson's activities constitute "consumer transactions" as contemplated by Section 501.203(1). We need only consider whether the Department is entitled to investigate Jackson's activities for the purpose of making further determinations. Accordingly, we find that the Department is entitled to investigate the complaints that it has received and is well within its right to issue the subpoenas to further this purpose.
We reach the same result when addressing Jackson's contention on appeal that his activities are protected by the First Amendment. The instant case deals only with the issuance of investigative subpoenas and is not a determination on the merits of a criminal prosecution or a civil lawsuit, where the question of whether Section 501.203(1) conflicts with the appellee's religious freedom must be answered. Therefore, the First Amendment freedom of religion clause is not a bar to the Department's issuance of subpoenas involved herein. From a review of the leading cases governing this area, it is clear that the First Amendment freedom of religion arguments *866 are not a bar to the enforcement of laws which are directed at conduct rather than belief, have a secular purpose and effect, and are justified by governmental interests in public health, safety and welfare. See Department of Human Resources of Oregon v. Smith, ___ U.S. ___, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); Church of The Lukumi Babalu Aye, Inc. v. City of Hialeah, 723 F. Supp. 1467 (S.D. Fla. 1989) (municipal ordinances regulating ritual animal sacrifices held not violative of First Amendment on their face because they could apply to wide range of conduct other than conduct of religious groups challenging the ordinances); Town v. State ex rel. Reno, 377 So.2d 648 (Fla. 1979) (State's compelling interest outweighs use of cannabis for religious purposes), cert. denied, 449 U.S. 803, 101 S.Ct. 48, 66 L.Ed.2d 7 (1980).
Accordingly, the trial court was in error in granting the Respondent's motion. The Writ of Certiorari is granted and the order under review is quashed.
BARKDULL, J., concurs.
GERSTEN, Judge, specially concurring.
This appears to be a case of too little being done to safeguard the citizens of the State of Florida. Henry Jackson's cleverly worded solicitations for his alleged religious activities have apparently defrauded unsuspecting contributors into believing that in exchange for their contributions, they will receive a winning lottery number.
Nowhere does Jackson, a/k/a Reverend Henry Jackson, Rev. Lee, Bishop Joseph Casper, Rev. John Devine III, and Rev. Wallace Blackwell, make a specific offer to exchange a winning number for money. He simply promises to send "red hot numbers" revealed to him by God. Jackson says he will even send the numbers for free. A typical example of his mailed solicitations included the following[1]:

*867
$$ GOD CAN BLESS $$ REV. HENRY JACKSON $$ YOU CAN $$
 P.O. BOX 9207
$$ YOU WITH HIALEAH, FLORIDA. XXXXX-XXXX $$ ENJOY $$
$$ 5,000 OR EVEN $$ $$ BIG CASH $$
$$ MUCH MORE $$ $$ FREE $$
$$ FREE $$
$$ FREE $$ $$ FREE $$ $$ FREE $$ $$ FREE $$

I WILL SEND YOU A RED HOT ONE-DAY ONE-WAY STRAIGHT MONEY BLESSING FREE FOR SATURDAY OF NEXT WEEK. That could put into your pockets $5,000 or even more in Just One Day. FREE - FREE
GOD TOLD ME TO SEND YOU THIS ONE RED HOT ONE-DAY ONE-WAY STRAIGHT MONEY BLESSING FOR SATURDAY OF NEXT WEEK FREE. GOD SHOWED ME that you have been struggling with those Un-Paid Bills and I want you to know that God can put Cold Green Cash into your pockets in Just 24 Hours.
GOD WANT YOU TO GET YOUR HAND ON SOME BIG CASH IN JUST ONE DAY to meet all those Money needs and this Red Hot Blessing is yours FREE - FREE - FREE.
YES, THROUGH THE POWER OF GOD you can blessed in One Day with $5,000, 10,000, $20,000 or even much more Payoff all your Old Bills and put Extra Cash into the Bank. I want to send you a One-Day One-Way Straight Red Hot Money Blessing FREE, that God Showed me putting Cash into your pockets, AND IT'S FREE.
MONEY FOR RENT, MONEY FOR BILLS AND COLD GREEN CASH TO STUFF YOUR POCKETS CAN ALL BE YOURS ON SATURDAY OF NEXT WEEK so HURRY AND WRITE ME.
Hundreds have Purchased New Homes, New Automobiles and many of them have put money into the Bank from the One Day Straight Money Blessing I send the FREE.
DEAR REV. JACKSON:
I WANT TO THANK YOU THE MONEY BLESSING YOU SENT ME FOR THURSDAY JAN. 14TH WAS RS: 52:7 AND I WAS BLESSED WITH $9,000 THAT DAY. GOD BLESS YOU, HERE IS MY TITHES TO HELP YOUR MINISTRY. MR. A.T.

CHICAGO, IL.
GOD SHOWED JOHN OF REVELATION A NUMBER, AND GOD SHOWED ME IN A VISION COMING DOWN FROM HEAVEN A HOLY NUMBER THAT WAS ON FIRE. "GOD'S BLESSING NUMBER"
Yes, you can put an End to your Money Troubles on Saturday of Next Week and It's FREE.
I WANT TO SEND YOU THIS ONE RED HOT ONE-DAY ONE-WAY STRAIGHT FINANCIAL BLESSING FOR SATURDAY OF NEXT WEEK. FREE.
WHEN WRITING SEND 2 SELF-ADDRESSED STAMPED ENVELOPES. HURRY AND WRITE ME TODAY.
NAME ________________________________ ADDRESS ___________________ APT# ____
CITY ________________________________ STATE _____________________ ZIP ___
I NEED BIG MONEY TO PAY MY BILLS. []
PLEASE SEND ME THE FREE FREE FREE RED HOT ONE-DAY ONE-WAY STRAIGHT MONEY BLESSING GOD SHOWED YOU BLESSING ME WITH COLD GREEN CASH ON SATURDAY OF NEXT WEEK [] AFTER I'AM BLESSED I AGREE TO GIVE TO YOUR MINISTRY 10% OF WHAT GOD BLESS ME WITH. []
There is no evidence in the record, however, of anyone receiving the numbers for free. What is in the record are complaints of those who sent their money and in exchange, received a losing number.
Faced with an overwhelming number of complaints from the public, the State stepped in and commenced an "investigation" of Jackson's activities. The record is clear that the State did not undertake a criminal investigation, arrest him, or seek a cease and desist order under section 895.05, Florida Statutes (1989), to prevent further victimization.
*868 Jackson even admits that "the State has other alternatives available to prosecute any criminal or civil violation allegedly committed by the Reverend or his ministry." Jackson suggests that "if the ministry has allegedly violated any criminal laws, the State Attorney's office would have the authority to investigate and/or prosecute."
What the State did was issue investigative subpoenas for purported violations of the "Deceptive and Unfair Trade Practices Act." See § 501.203(1), Fla. Stat. (1989). The State alleged that Jackson violated that act by undertaking deceptive "consumer transactions."
Instead of pursuing the myriad of criminal violations that Jackson admits may exist, the State raises Jackson's conduct to the level of a "consumer transaction." Con artists and shell game operators might also fall within the definition of a consumer transaction, but the State doesn't usually charge them with deceptive advertising.
By the State's own admission, one of the purposes of the investigative subpoenas was to determine if the activities of the "Deceptive and Unfair Trade Practices Act" applied to Jackson. Instead of proceeding against Jackson under the authority of statutes which were evidently being violated, the State chose to pursue a possible violation of an act, which the State was not sure even applied to Jackson's activities.
Jackson asserts he is merely like any other religious leader soliciting donations "on the subjective belief and promise that those who contribute to the tithe will, in some manner, be blessed." Jackson further contends this practice of soliciting donations is not proscribed by the Act.
The State's brief portrays Jackson as a villain who preys on the weak and downtrodden. The State would have us believe that Jackson is a man without a heart, a man without a soul; a man who betrays the hopes of the impoverished, taking money from those who can least afford it.
Yet, the State takes a milquetoast approach to stopping this alleged iniquity. This civil case against Jackson has already suffered two dismissals at the trial level. But the State has continuously pursued this avenue for a period of years. Meanwhile, Jackson has been permitted to continue his activities since at least 1987.
Why does the State fire blanks when it has a potent arsenal to stop this type of activity? One cannot help but wonder why the State is taking this approach when Jackson admits alternative criminal avenues are available to prosecute him. See, e.g., § 812.014, Fla. Stat. (1989) ("Theft"); § 817.11, Fla. Stat. (1989) ("Obtaining property by fraudulent promise to furnish inside information"); § 817.034, Fla. Stat. (1989) ("Florida Communications Fraud Act"); Ch. 895, Fla. Stat. (1989) (RICO); see also Rogers v. State, 487 So.2d 57 (Fla. 3d DCA 1986).
Cynics might point to this subpoena, veiled in a gossamer net of "unfair trade practices," as nothing more than a fishing expedition for the State to compile evidence against Jackson for future criminal prosecution. If so, the State should know that this practice is intolerable and anathema to our concepts of fairness. See, e.g., Dean v. State, 478 So.2d 38 (Fla. 1985); State v. Hayes, 305 So.2d 819 (Fla. 1st DCA 1975).
I concur in the result of the majority, but only because it allows the State to proceed in some fashion against this person.
NOTES
[1] Section 501.203(1), Florida Statutes (1989), defines "consumer transactions" as:

[A] sale, lease, assignment, award by chance, or other disposition of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family, or household or that relate to a business opportunity that requires both his expenditure of money or property and his personal services on a continuing basis and in which he has not been previously engaged, or a solicitation by a supplier with respect to any of these dispositions.
[1] Errors are contained in the original as found in the record.